## FUGIHARA ORIEMON *v.* THE TERRITORY OF HAWAII.

ERROR TO CIRCUIT COURT, FOURTH CIRCUIT.

SUBMITTED MARCH 29, 1901.          DECIDED MAY 23, 1901.

FREAR, C.J., GALBRAITH AND PERRY, JJ.

1. Objections to the manner of drawing and empanneling the grand jury returning an indictment must be presented and urged to the court at the first opportunity, or they will be deemed waived.
2. Every presumption is in favor of the regularity of the proceedings of the trial court. When the record is silent as to the manner of drawing the grand jury this court will presume that it was regularly and properly drawn.
3. The time and place of execution are by law no part of the judgment. There is no statute in this Territory authorizing the court in pronouncing the death sentence to name the place and day of execution.
4. Where the court in pronouncing the death sentence names the place and day of execution the sentence is not thereby rendered void. That part of the sentence in excess of the authority of the court being separable from the legal part may be stricken out or the prisoner may be taken before the court and resentenced.

OPINION OF THE COURT BY GALBRAITH, J.

At the July, 1900, term of the Circuit Court of the Fourth Circuit, the plaintiff in error was convicted of the crime of murder in the first degree, and was sentenced to suffer the death penalty in the manner provided by law, on the 21st day of September, 1900. A writ of habeas corpus was sued out from

this court in his behalf and a stay of execution granted. After hearing and argument, at the September term, the writ was denied and the prisoner remanded (13 Haw. 102). A writ of error was then issued and the cause stood for hearing at the December term of this court. By stipulation entered into between the Attorney-General and the attorney for the petitioner the cause was continued and came on for hearing at the March, 1901, term. At the March term a motion was presented and argued asking leave to file a supplemental petition in error. This motion was denied by oral opinion announced during the term. The cause was then argued and submitted on the record sent up by the clerk of the Circuit Court of the Fourth Circuit in return to the writ.

The office of a writ of error as defined by our statute is: "A writ of error may be had to correct any error appearing on the record, either of law or fact, or for any cause which might be assigned as error at common law; provided, however, that no writ of error shall issue for any defect of form merely in any declaration, nor for any matter held for the benefit of the plaintiff in error." Civil Laws 1897, Sec. 1445.

Sec. 1446. "For all purposes of this Act the record shall be deemed to include all pleadings, motions, notes or bills of exceptions, exhibits, clerk's or magistrate's notes of proceedings, and if so desired by the plaintiff in error a transcript of the evidence in the case."

The record before us consists of the indictment, the verdict, motion for a new trial, motion in arrest of judgment and the clerk's minutes of the proceedings in the case. The instructions asked and refused and those given by the Court, the stenographer's notes of the evidence and objections, if any were made, to the manner of drawing and empanelling the grand jury and objections to the petit jury might have been made part of the record if proper steps had been taken on behalf of the petitioner.

The petitioner enumerates seventeen assignments of error in his petition for the writ. At the oral argument and in the brief

he argues only three alleged errors and only two of these are included in the original assignment, and only one of the errors argued finds support in the record.

This court cannot be expected to wander out into the realms of imagination in search for visionary errors or to presume that errors might have occurred in the course of the trial. Every presumption that a court may rightfully entertain in a criminal cause is in favor of the record and the regularity of the proceedings of the trial court. The duty is incumbent on the petitioner alleging error to make the same manifest by bringing the record before the appellate court so as to disclose either that the things complained of were not done in the manner provided by law or were done in a manner prejudicial to the rights of the petitioner. We cannot presume error in the absence of the record. The court had a right to expect when the writ was granted that petitioner would at least bring all of the record of the trial court before us or show good cause for not doing it. He has done neither.

We will examine the record before us and the assignments supported thereby.

The assignments argued are:

1. That the grand jury returning the indictment against petitioner was not drawn in the manner provided by law and was therefore an illegal body.

2. That the judgment and sentence of the court fixed the date of execution contrary to law and is void.

3. That the stenographer did not transcribe and file the judge's charge to the jury within ten days after the trial and that for this reason the petitioner is entitled to a new trial as a matter of right.

This last is not included in the original assignment of errors and cannot now be considered in view of the decision on the motion to file supplemental petition in error.

It is contended for the petitioner that "in the very beginning we are apprised of the fact that the grand jury which found and presented the alleged indictment upon which the petitioner in

error was tried, convicted and sentenced, was summoned days after the opening day of the term of the court in which he was tried, while the Organic Act (Sec. 83) provides that they may (shall) be drawn in the manner provided by the Hawaiian statutes for drawing petty jurors." Counsel neglects to point out in what part of the record we are apprised of the fact of the time when or the manner in which the grand jury that returned the indictment against the petitioner was drawn. We have searched the record in vain for this information.

The general rule is that "the formalities for the selection, organization, and doings of the grand jury are things separable from the judicial jurisdiction and other like fundamentals; so that defendants can waive irregularities therein, and they do waive any one whereof they have knowledge if they fail to object thereto promptly, or at the first step in the cause permissible." Bishop New C. P. Vol. 1, Sec. 872. The record does not disclose that the defendant sought to avail himself of any possible irregularity in the drawing of the grand jury or the competency of any of its members prior to the commencement of the proceedings in this court. Under the above rule he certainly waived any rights he may have had to urge this objection at this time.

In the absence of any showing to the contrary in the record, we are bound to assume that the Circuit Court of the Fourth Circuit pursued a lawful method in providing a grand jury for the July, 1900, term.

The next objection is to the form of the sentence. That the court exceeded its jurisdiction in fixing the time of the execution and that for that reason the entire sentence and judgment is void.

The only record of the sentence now before us is that contained in the clerk's minutes, and these show that on motion of the deputy attorney-general for sentence of Fugihara Oriemon, the court sentenced the defendant directing that he be taken to the Hilo jail, town of Hilo, Island of Hawaii, and Territory of Hawaii, and within the jurisdiction of the court, and

"from thence to the place of execution within the enclosed yard of said jail, and that on Friday the 21st day of September, A. D. 1900, between the hours of 10 o'clock in the forenoon and 3 o'clock in the afternoon of said day," he, the said defendant then and there suffer the punishment of death by being hung by the neck until dead.

The provisions of the criminal code pertinent to the question are Sec. 37, defining the crime of murder and providing that it shall be of two degrees, the first and second, to be found by the jury, and Sec. 41, which prescribes the death penalty for murder in the first degree, and Sec. 682, which reads:

"The verdict of the jury or the decision of the court, as the case may be, shall, subject to arrest of judgment, found the sentence to be passed in open court, by either of the justices, pursuant to the penalties of the law charged and found to have been violated, subject to the executive clemency, or a motion in arrest of execution for cause."

Sec. 685. "In all cases where the law of this Republic awards the punishment of death, there shall always intervene at least forty-eight hours between the conviction and the sentence; and at least fourteen days between the sentence and the execution."

And Sec. 686. "The marshal, or some one deputed by him, shall inflict the punishment of death, by hanging the criminal by the neck until dead, when the body shall be disposed of pursuant to the direction of the court. No capital punishment shall be so inflicted until the warrant for that purpose shall be signed by the President; nor shall such punishment be inflicted after the President's pardon."

The words "high sheriff" should be substituted in Sec. 686 for the word "marshal," and "Governor" for the word "President" in the latter part of the section and the word "Territory" for "Republic" in Sec. 685. (Organic Act, Secs. 8 and 9.)

At the common law the time and place of execution were no part of the judgment, and it was not the practice to insert either in the sentence. IV Blackstone p. 404; *Rex v. Doyle*, 1 Leach C. C. 67. In most instances it was left with the sheriff "to do

execution within a convenient time." IV Blackstone, p. 404; Bishop's Crim. Proc. Vol. 1, Secs. 1311 and 1336.

"The day on which death or other corporal pain is to be inflicted need not be inserted in the judgment. If it is not, it may be in the warrant; or if it is in the judgment, and execution fails on that day, as where the sheriff dies, or the prisoner escapes, then is retaken, the court may direct it to be done on a subsequent day." Bishop, New Crim. Law, Vol. 1, Sec. 951.

This question is now regulated by statute in England and most of the States of the Union. Here, however, we have no statute on the subject other than that contained in Sec. 682, i. e., that forty-eight hours shall intervene between conviction and sentence and at least fourteen days between the sentence and the excution.

It seems that the Circuit Judge in naming the place and day of execution in the sentence followed the established practice in this jurisdiction. Now for the first time the correctness of the practice has been questioned.

It is insisted that the court having fixed the date of execution in the sentence the entire sentence is thereby rendered void. The case of *Lowenberg v. The People*, 27 N. Y. 336, is relied on to support this contention. We are clear that this case does not go so far as is claimed for it. It does however support the contention that the court had no authority to fix the day of execution in the sentence and that that part of the sentence in excess of the authority of the court is void. This does not affect that part of the judgment and sentence within the power of the court to render provided that the legal part can be separated from the illegal. The part of the sentence in excess of the authority of the judge is easily separable from the other part of the sentence, and if it were necessary this court could order the illegal part stricken from the sentence.

Sec. 1456, Civil Laws, 1897; *Jackson v. U. S.* 102 Fed. Rep. 477; *Gardes v. U. S.* 87 Fed. Rep. 172; *U. S. v. Pridgeon*, 153 U. S., 48; *The People v. Bonilla*, 38 Cal. 699; *Territory v. Poloaiea*, 13 Haw. 335.

The statute authorized and makes it the duty of the court to pronounce the judgment and sentence of the law against the petitioner for the crime of which he had been found guilty by the verdict of the jury, and to direct that the penalty of the law be inflicted in the manner provided by the statute and that the petitioner be held in custody until the penalty is inflicted.

The statute makes it the duty of the high sheriff or his deputy to execute the sentence of the court but provides that this shall not be done until after the death warrant has been issued by the Governor. The same duty rests upon the Governor to issue the death warrant as does upon the court to pronounce sentence or upon the high sheriff to execute the same. We do not agree with the suggestion that the Governor might prevent execution by simply refusing to issue the death warrant. It is clearly within his right to prevent the execution in one way only and that is by the exercise of the pardoning power. It was probably the intention in requiring the issuing of the death warrant to give an opportunity and make it the duty of the Governor to investigate all cases of capital punishment so that the pardoning power would be exercised in all proper cases.

In the absence of statutory provision relative to the time and place of execution it seems that the common law rule ought to prevail and that the time and the place of execution ought to be left to the high sheriff "to do execution within a convenient time."

So far as the record shows the motion for new trial and that in arrest of judgment were properly denied.

The clerk's minutes show that the petitioner was arraigned on the 10th day of July, 1900, on an indictment returned by the grand jury charging him with murder in the first degree; that on March 25th, 1900, in the district of Hamakua, Territory of Hawaii, he did wilfully and with malice aforethought kill and murder Sokuda Nimezo, a fellow countryman; that when asked to plead to this indictment he stood mute, and that the court ordered a plea of "not guilty" entered for him. This was authorized by statute. (Penal Laws, Sec. 650.) That the petitioner

informed the court that he had no counsel and the court assigned Thomas C. Ridgway, an attorney of the bar, to defend him. That on Friday, the 13th of July, 1900, the case was called for trial and a jury of twelve was called and sworn to try the petitioner; that witnesses were examined for the Territory and the petitioner was sworn on his own behalf; that the attorney for the Territory and petitioner's counsel addressed the jury; that the court charged the jury at 5 p. m.; that the jury retired to deliberate on the verdict at 5:55 p. m.; and returned at 6:30 p. m. with the following verdict:

"We, the jury in the above entitled cause find the defendant said Fugihara Oriemon guilty as charged.

(Signed)          M. V. HOLMES, Foreman."

That the jury was then polled and each of the jurors answered that that was his verdict. That on July 17th the attorney for defendant filed his motion for a new trial and in arrest of judgment, and that each of those motions was overruled. That thereupon the Deputy Attorney-General moved for sentence and that the court pronounced the sentence hereinbefore quoted.

We are bound to conclude from the record before us that the petitioner was legally and rightfully convicted.

Now that the day of execution named in the sentence has passed, it seems, that its presence there can in no way prejudice any right of the petitioner. But in order to avoid any possible question of the regularity of the proceedings in the execution of the greatest punishment known to the law, it is deemed advisable that the petitioner should be resentenced. This may be done either in this court or in the circuit court. As a matter of practice we prefer that it should be done in the circuit court.

We therefore remand the record to the circuit court of the Fourth Circuit of the Territory of Hawaii and direct that the petitioner be taken before said court, at a regular or special term thereof, and resentenced to suffer the punishment prescribed by law for the crime whereof he has been duly convicted and that in the meantime the petitioner be kept in close confinement by the high sheriff.

*C. C. Bitting* and *Thos. C. Ridgway* attorneys for the petitioner.

*J. W. Cathcart, Deputy Attorney-General,* for the Territory.