## TONG KAI *alias* TAING KAI *v* TERRITORY OF HAWAII.

ERROR TO CIRCUIT COURT, FIRST CIRCUIT.

SUBMITTED MARCH 22, 1904.        DECIDED APRIL 30, 1904.

FREAR, C.J., GALBRAITH AND PERRY, JJ.

In the absence of any showing to the contrary the presumption is that the grand jurors who found an indictment were good and lawful men and that not less than twelve concurred in the finding.

A person accused of an offense has no right to appear before or to have witnesses heard in his behalf by the grand jury.

A deputy of the attorney general for the Territory is an executive officer and may *decide* and act upon matters that come or are brought before him, within the meaning of Section 255 of the Penal Laws.

An attempt by a promise of a gift of money to influence a deputy of the attorney general for the Territory, even before the intended commission of an offense, in his decision and action concerning the criminal prosecution of the offender, is punishable under §255 of the Penal Laws.

A conviction based upon the uncorroborated testimony of an accomplice is legal.

A person who has sworn falsely in a case but has not been convicted of perjury, is not thereby rendered incompetent as a witness in a subsequent case.

OPINION OF THE COURT BY PERRY, J.

(Galbraith, J., dissenting.)

The plaintiff in error was tried, convicted and sentenced for violating Section 255 of the Penal Laws. Eleven errors are assigned. The first and tenth assignments are abandoned. The

second, third and fourth are that it does not appear that the grand jurors who indicted the plaintiff in error were good and lawful men of the First Circuit, that with the exception of the foreman it does not appear that not less than twelve grand jurors found a true bill against the plaintiff and that the grand jury was instructed, in effect, not to permit accused persons or their attorneys or witnesses to appear before or be heard by it. None of these objections were raised until after verdict and must be deemed to have been waived. *Oriemon v. Territory,* 13 Haw. 413, 416. But even if regarded as not waived they cannot be sustained. The verdict on its face purports to have been presented by "the grand jurors of the Territory of Hawaii", bears the endorsement "a true bill found this 14th day of May, A. D. 1903" over the signature of "A. W. Pearson, Foreman of the Grand Jury" and was duly filed. In the absence of any showing to the contrary, the presumption is that the grand jurors were good and lawful men and that not less than twelve concurred in finding the indictment. The instruction given was correct. The accused had no right to appear or to have witnesses heard in his behalf by the grand jury.

5. That there was no evidence at the trial that plaintiff in error corruptly promised an executive officer of the Territory of Hawaii a sum of money to influence his acts. The indictment charged, in substance, that the plaintiff did corruptly promise the sum of fifteen hundred dollars as a gift and gratuity to one E. C. Peters, an executive officer of the Territory, with intent to influence him in his acts as such officer in proceedings that might by law come or be brought before him in his official capacity, to-wit, criminal prosecutions by the Territory against the plaintiff and others for the offense of maintaining and conducting at Honolulu a lottery known as pakapio. The evidence was such as to justify a finding that the plaintiff offered to Mr. Peters, as Deputy Attorney General, the sum of $1500 per week as a gift or gratuity for the purpose of influencing him and the other officials of the attorney general's department to desist from arresting or prosecuting the plaintiff and certain associates of

his in the event of their opening and conducting a certain lottery which they were desirous of maintaining in this city contrary to the provisions of our penal statutes. It may be that the evidence does not show how Mr. Peters was to secure the co-operation of his superior and assistants, but there was sufficient to show that the money was to be paid to him, without any condition or obligation on his part to pay the whole or any part of it to others, and that he was to see to it that the desired immunity from arrest and punishment followed.

The evidence shows that Mr. Peters was at the time deputy attorney general of the Territory. It is contended that no such office exists under our law or that, if it does, such deputy does not possess the same powers as are vested in the attorney general by law and that, therefore, Mr. Peters could not, in any official manner, be concerned in criminal prosecutions. Whether or not a deputy attorney general can be appointed with all the powers of the attorney general need not be determined. It is sufficient for the purposes of this case if authority exists, as we think it does, for the appointment of such a deputy with such of the powers of the Attorney General as relate to the prosecution of offenders throughout the Territory. C.L., §1013, provides that "the Attorney General shall appear for the Government personally or by deputy in all the courts of record of this Territory, in all cases criminal or civil in which the Government may be a party or be interested, and he shall in like manner appear in the District Courts when requested so to do by the High Sheriff or the Sheriff of any one of the Islands", and §1014, that "he shall also be vigilant and active in detecting offenders against the laws of the Territory and shall prosecute the same with diligence." Even if the power to appoint deputies is not elsewhere conferred, it is certainly conferred by implication by §1013 and the power and the duty to detect and prosecute offenders is expressly granted by the two sections upon the deputies as well as upon the superior. That §1021 expressly authorizes the appointment, under certain circumstances, of a deputy for any judicial district does not militate against these views. The leg-

islature, it may be added, has for many years recognized the existence of the power to appoint a deputy attorney general by making successive appropriations of a salary for that officer.

The plaintiff further contends that the statute is not sufficiently broad to cover such a case as that disclosed by the evidence. The statute (P. L., §255) reads: "Whoever corruptly gives or promises to any executive, legislative or judicial officer, or to any master in chancery, juror, appraiser, referee, arbitrator or umpire, any gift, gratuity, service or benefit, with intent to influence his vote, judgment, opinion, decision or other acts as such in any case, question, proceeding or matter pending, or that may by law come or be brought before him in his capacity as aforesaid, shall be punished by imprisonment at hard labor not more than two years, or by fine not exceeding five hundred dollars." The argument is that the words "come or be brought *before* him" disclose an intention to refer to only such officers as have to *decide* matters, although it seems to be conceded that the section is not limited in its operation to *judicial* officers but may include some executive officers, as, for example, the High Sheriff, and legislators, passing upon certain questions in the exercise of their duties. *Executive* officers are expressly mentioned in the section. There is no limitation that the intent shall be to influence the judgment, opinion or decision of the officer but in express words it is made to appear that the intent may be to influence "other acts" and not only in any "case" but also in any "question, proceeding or matter" pending or that may "come or be brought before" the officer as such. When the attention of a prosecuting officer is called to an alleged violation of a penal statute, the "question" or "matter" of the prosecution of the alleged offenders "comes" or is "brought before" him and must be decided and acted upon by him. An attempt by a promise of a gift of money to influence such officer, before the intended commission of the offense, in his decision and action in such matter, falls within the language and scope of the section and is punishable under its provisions.

6. That the only relevant evidence presented to the trial

jury against the plaintiff in error was the uncorroborated evidence of a confessed accomplice, then under indictment for the same offense. A conviction based upon the uncorroborated testimony of an accomplice is legal. *The King v. Wo Sow,* 7 Haw. 734, 737; *Republic v. Edwards,* 11 Haw. 571-573. Moreover, corroborating testimony was given by Mr. Peters and by the witness Ah Kum. It is also argued that there was an abuse of discretion in the court's failure to advise or caution the jury against convicting on the uncorroborated testimony of the accomplice, but this point is not assigned as error and cannot be considered.

7. That the trial court refused to allow an examination of Ah Kum as to his qualifications as a witness. The witness before being sworn was examined to some extent as to his understanding as to the nature of an oath by counsel for the defendant. The prosecuting officer then noted an objection, which was sustained and the clerk was ordered to administer the oath to the witness. An exception was noted but no desire was expressed to examine the witness any further as to his qualifications. We find no error in the ruling.

8. That the trial jury was allowed to consider the testimony of a confessed perjurer, Ah Kum. The witness named testified on the direct examination that the defendant and himself had been shareholders in a certain *pakapio* bank called the Tuck Lee Bank and on cross-examination that in the trial of another case he had stated under oath that he did not know anything about the Tuck Lee Bank. Whether the fact testified to was material in the former case does not appear. The witness has not been convicted of the offense of perjury now claimed by plaintiff in error to have been committed on the occasion referred to. Because a person has committed perjury as to a particular fact, it does not follow that he can never afterwards feel the obligation of an oath. He is not, in the absence of a statute to the contrary, thereby rendered incompetent as a witness. The fact that on a former occasion he swore falsely simply goes to his credibility. See *The King v. Teal,* 11 East 307,

311. Section 1412, C.L., does not declare one incompetent as a witness who has committed but has not been convicted of perjury.

9 and 11. These assignments relate to rulings as to the admissibility of evidence and to instructions given to the jury. No instructions were requested at the trial by the accused nor were any objections or exceptions made or noted by him to those given. We find no reversible error.

The writ is dismissed.

*J. A. Matthewman* for plaintiff in error.

*M. F. Prosser,* assistant attorney general, for defendant in error.

### DISSENTING OPINION OF GALBRAITH, J.

I cannot concur in the foregoing opinion and judgment of the majority of the Court.

Section 255, under which the charge is laid is found in Chapter 29, Penal Laws, entitled, "Obstructing the Course of Justice" and reads as follows: "Whoever corruptly gives or promises to any executive, legislative or judicial officer, or to any master in chancery, juror, appraiser, referee, arbitrator or umpire, any gift, gratuity, service or benefit, with intent to influence his vote, judgment, opinion, decision or other acts as such in any case, question, proceeding or matter pending, or that may by law come or be brought before him in his capacity as aforesaid, shall be punished by imprisonment at hard labor not more than two years, or by fine not exceeding five hundred dollars."

The charging part of the indictment alleges that the defendant "unlawfully, feloniously and corruptly, to one Emil Cornelius Peters, then and there being an executive officer of the Territory of Hawaii, to-wit: a deputy Attorney General of the Territory of Hawaii, with intent in him the said Taing Kai thereby to influence him, the said Emil Cornelius Peters, in his acts as such deputy Attorney General in proceedings that might by law come and be brought before him, the said Emil Corne-

lius Peters, in his capacity as said deputy Attorney General, to-wit: criminal prosecutions by the Territory of Hawaii against the said Taing Kai, and others associated with him, the said Taing Kai, whose names are to the grand jurors unknown, for the offense of maintaining and conducting at Honolulu, Island of Oahu, Territory of Hawaii, a lottery known as paka pio, a sum of money, to-wit: the sum of fifteen hundred dollars, as a gift and gratuity and benefit did promise contrary to the form of the statute in such case made and provided."

Evidently it was intended to charge that deputy Attorney General Peters is an executive officer of the Territory and that the defendant intending to influence him in his official capacity in certain criminal prosecutions by the Territory against the defendant and others did promise a gift or gratuity. This is certainly the most favorable light in which this indictment can be viewed still it does not charge a crime under the law of this Territory or an attempt to obstruct "the Course of Justice". The defendant might have admitted the truth of every thing charged in the indictment and still insisted that he was guiltless of any offense against the law. He had a right to promise the deputy Attorney General a gift or gratuity with intent to influence his official conduct provided he did not intend thereby to seduce him from the performance of some official duty. This indictment fails to allege whether or not the defendant intended to induce the deputy attorney general to be good to him and to pursue his enemies in these criminal proceedings, either pending or impending, or whether he wanted to induce the deputy Attorney General to dismiss or refrain from prosecuting proceedings against the defendant and his countrymen and to prosecute with vigor "the stranger within our gates" or the white man caught tempting the chinese goddess of chance. In other words it fails to charge the defendant with any criminal act.

This indictment has the same weakness and is bad for the same reasons as that in the case of *The Republic v. Young Hee,* 10 Haw. 114, 116. What the Court said in that case is applicable to this. "The proceeding or matter should be described.

The court should be apprised of the nature of the matter in reference to which the acts of the officer were intended to be influenced by the bribe. The acts to be criminal should be of a nature to pervert or obstruct the course of justice if the officer was influenced by the bribe. The indictment should have set them out, for if they were not to accomplish a corrupt purpose it would not be criminal to give a gratuity to influence the officer to do them or to refrain from doing them. The words of the statute have been followed in the indictment, but they are general words and require a fuller statement of the nature of the purpose which the bribe was intended to subserve."

The circuit court was clearly in error in charging the jury that the deputy Attorney General was an "executive officer" within the meaning of Section 255 Penal Laws. One of the authorities cited in support of the instruction, *State v. Currie,* 35 Tex. 17, holds that a County Attorney under a statute against bribing "legislative, executive and judicial officers", is a judicial officer. Under our statute the deputy Attorney General has no duties prescribed by law. He is a deputy to the Attorney General who is responsible "for all the acts of such deputy or deputies". (Sec. 1021, C.L.) We know as a matter of law that no criminal prosecutions can "by law come or be brought before him in his official capacity". He is not a judicial officer. When he appears for the Territory in criminal cases these proceedings cannot be said to "come or be brought before him". If he turns detective or policeman or constable and hunts up violators of the law and files complaints in the District Court he would not then be working as deputy Attorney General and even then these proceedings would not "come or be before him" as deputy Attorney General. They would be before the District Court and at no time in the history of their course from the first arrest until the jail door closes behind the culprit could the proceedings properly be said to be before the deputy Attorney General. The deputy Attorney General is not an officer with independent duties to perform. He is a subordinate and is given no authority to act independently.

He acts for and under the Attorney General who is respon-sible for his acts. The promising a gift or gratuity to the deputy Attorney General could not possibly constitute a crime under this section of the statute.

In the third instruction to the jury the Circuit Court ex-tended the issues and submitted to the jury for determination issues not presented by the indictment. This instruction reads:

"I instruct you, Gentlemen of the Jury, that the crime as set forth in this indictment is complete without the tender or the production of the money, and the party who offers or promises the same is guilty whether the money constituting the bribe is to come from himself or from another: therefore, if you believe from the evidence, beyond a reasonable doubt, that Taing Kai promised to Mr. Peters, as deputy Attorney General, the sum of fifteen hundred dollars a week or any other sum in return for which the Attorney General's office or Mr. Peters as deputy Attorney General, was to insure the said Taing Kai or his asso-ciates from prosecution or punishment for conducting a lottery, or the game of paka pio, then the defendant is guilty as charged in the indictment, and it is your duty to convict him." This instruction charges the defendant with a crime if the indictment does not. The indictment did not charge the defendant with promising a gift or gratuity to the deputy Attorney General with intent to influence the "action of the Attorney General's office", or with the understanding that Mr. Peters, or any one else "was to insure" the defendant from "prosecution or punish-ment", nor did it charge that the defendant offered a gratuity or gift of fifteen hundred dollars per week, still the jury are instructed if they believe from the evidence beyond a reasonable doubt that he did this it was their duty to find him guilty. Un-der this instruction what became of the constitutional guaran-tee that "No person shall be held to answer for an * * * in-famous crime unless on a presentment or indictment of a grand jury"? It was certainly frittered away, and the defendant was held to answer and possibly was convicted of an infamous crime

on charges not contained in an indictment but in the instruction of a Circuit Judge to the jury. For the errors of this charge alone the judgment of conviction should be set aside and the defendant discharged.

I am impressed with the conviction that there was great haste exhibited to land this Chinaman in prison for some undisclosed reason. The indictment was returned May 14, charging the alleged offense May 10, and he was tried and convicted May 27. Whether or not he was ever arraigned or plead to the indictment the record here does not disclose. At any rate there seems to have been a prevalent desire to speed the defendant along to the reef. The counsel who then appeared for him offered very little resistance to the fulfilment of this desire, in fact the inference that he shared in the desire might be justified from his line of defense and the feebleness with which the same was presented.

It may be important to the public service and to the safety and security of the Attorney General's department that a "horrible example" be made of this defendant in order to deter others from walking in his steps but none of these things in my opinion are of so great importance as the orderly adimnistration of the law, the proper conviction of those guilty of crime according to the well settled rules of procedure.

This defendant was not charged in the indictment with a crime, although he was so charged in one of the court's instructions to the jury, and therefore could not have been properly convicted. He having been improperly convicted and sentenced to penal servitude this Court ought to set aside such conviction and sentence and restore him to liberty again.