IN THE MATTER OF THE APPLICATION OF RAY-
MOND S. COLL, PETITIONER IN PETITION FOR
A WRIT OF PROHIBITION *against* HONORABLE
JOHN R. DESHA, JUDGE OF THE CIRCUIT
COURT OF THE FIRST JUDICIAL CIRCUIT OF
THE TERRITORY OF HAWAII, DIVISION OF
DOMESTIC RELATIONS.

No. 1565.

ORIGINAL.

ARGUED JUNE 13, 1924.                    DECIDED JUNE 18, 1924.

PETERS, C. J., PERRY AND LINDSAY, JJ.

CONTEMPT—*publications—after cause is ended.*

A judge of the circuit court is without jurisdiction to summar-
ily punish as and for a constructive contempt the publication
of an alleged contemptuous editorial concerning a cause there-
tofore finally determined and concluded in said court.

OPINION OF THE COURT BY PETERS, C. J.

This writ challenges the jurisdiction of the judge of
the circuit court of the first circuit presiding over the
division of domestic relations to punish petitioner as and
for a contempt in publishing or causing to be published
in "The Honolulu Advertiser," a newspaper published
in Honolulu, of which the petitioner is editor, an edi-
torial alleged to be an unfair report of proceedings in
the division of domestic relations and which, as it is
alleged, contained malicious invectives against said court
and tended to bring it and the administration of justice
into ridicule, contempt, discredit and odium.

The circumstances of the publication of the alleged
contemptuous editorial are as follows: A woman brought

an action against her husband for a divorce in the circuit court of the first circuit, the jurisdiction over which is in the division of domestic relations of that court. The husband answered and filed a cross-libel praying a divorce from his wife. Upon the conclusion of the trial on April 4, 1924, the libel and cross-libel were dismissed and the libellee-cross-libellant ordered to pay unto the attorney for the libellant on or before April 9 following the sum of $50 as and for a reasonable attorney's fee for services rendered in said court on behalf of libellant. This order for counsel fee was made at the same time and as a part of the order of dismissal. Upon failure of the libellee-cross-libellant to pay the attorney's fee as ordered he was cited for contempt and upon hearing had was adjudged guilty of contempt and sentenced to prison for a period of ten days. The mittimus, however, was stayed until April 23 in order, no doubt, to give him an opportunity to comply with the order. In default of payment the mittimus issued and the libellee-cross-libellant was committed to jail. On May 13, 1924, the libellee-cross-libellant was again cited for contempt for his failure to pay the attorney's fee as ordered but the hearing was continued until May 20, at which time, due to his persistent and continued refusal to pay said fee, he was again adjudged guilty of contempt and sentenced to imprisonment for a period of twenty days. On May 24 the libellee-cross-libellant paid the fee as ordered and was discharged from custody. On May 27, 1924, there appeared in The Honolulu Advertiser the following editorial:

"ELASTIC APPLICATION OF CONTEMPT OF COURT

"Contempt of court is becoming more elastic than the sap of a certain tree known commercially as rubber. More than once in the last year or so Hawaii has witnessed some remarkable applications of contempt of

court; but it remains for Judge John R. Desha to stretch it sufficiently to make his court a collection agency.

"A man, defendant in a divorce suit, is ordered to pay his wife's attorney a $50 fee. 'I can't,' said he. 'Ten days in jail,' was the judge's unanswerable retort. The 10 days served, the man is hauled into court again. He still protested his inability to pay. 'Twenty days,' remarked the court. Having served three days and no doubt deducing that geometrical or even arithmetical progression in jail sentences might stretch to eternity, the man paid.

"It is not to the point to inquire whether he could pay in the beginning or whether he could not. The point is that he was sent to jail for debt. Yes, it is true that his failure to pay was described as contempt of court, but the fundamental principle is not affected. In order to be consistent, will the learned judge send other debtors to jail, even if they do not owe money to attorneys?

"Contempt of court! Such incidents demonstrate why there is so much of it in the minds of the people."

On June 24, 1924, the Honorable the Judge of the circuit court presiding over the division of domestic relations of that court upon an information filed by a deputy county attorney of the City and County of Honolulu issued a show cause citing the petitioner to be and appear before said judge at a time and place certain and show cause why he should not be adjudged guilty of contempt of court because of the publication of the editorial quoted. Pending hearing upon the show cause the within writ issued.

The petitioner by his petition herein claims among other things that the editorial complained of was published after all litigation between the parties referred to in the editorial ceased; after the dismissal of both the libel for divorce and the cross-libel filed in the cause; after the libellee had been punished for contempt by the court's order, had paid the sum required by said order

to be paid and after his release from jail ordered by the court and that the said editorial was not a comment upon or relative to any matter pending before the court. The respondent by way of return to the alternative writ of prohibition issued herein admitted all the facts alleged in the petition and by way of demurrer challenged the sufficiency of the allegations therein to entitle the petitioner to the relief prayed.

The only question before this court upon the petition and the return of the respondent is whether the judge of the circuit court presiding over the division of domestic relations had jurisdiction to summarily punish the petitioner as and for a contempt of court by reason of the publication of the editorial complained of. The judges of the circuit courts of the Territory unquestionably have the right to punish as and for a contempt any person who by word or act impedes the due administration of justice in said courts. This power is inherent in the courts. Such words or acts may be a direct contempt when uttered or committed in the presence of the court or so near thereto as to interrupt its proceedings. On the other hand they may be uttered or committed out of the presence of the court and at a distance, when the contempt is considered an indirect or constructive one. If the article complained of constituted contempt of court it was necessarily an indirect or constructive contempt. To constitute constructive contempt, however, the alleged contemptuous article must concern or be referable to a pending cause. Liberty of the press does not permit publications respecting pending causes which are reasonably calculated to interfere with the due administration of justice. But when the cause is finished, the press and the public have a right to discuss it freely and criticize and even censure the decision of the court ren-

dered therein. (*Patterson* v. *Colorado,* 205 U. S. 454, 465; 13 C. J., title "Contempt," p. 37.)

The editorial is referable only to the ancillary proceedings taken by the court to enforce its order for the payment of libellant's counsel fee. It neither directly nor indirectly refers to the divorce proceeding or the merits thereof. At the time the editorial appeared the libellee-cross-libellant had paid the fee, purged himself of contempt and had been discharged from custody. No further proceedings in respect thereto could have been taken by the court or the party aggrieved. Payment and satisfaction of the order foreclosed all possible appeal to this court. The conclusion is inevitable that the cause to which the editorial referred was irrevocably determined and concluded and however unfair and however calculated to bring the court or the administration of justice into ridicule, contempt, discredit or odium, a point which we deem unnecessary to decide, its publication was not subject to direct proceedings against its author or the person responsible for its publication as and for a constructive contempt. Judges, similarly as other public officers, are open to criticism. So long as such criticism is not calculated to influence a judge in respect to matters then pending before him such criticism does not constitute contempt and for any injury suffered by him therefrom, he, similarly as others, must seek redress by the ordinary legal remedies provided for that purpose. The case of *In re Bush,* 8 Haw. 221, decided in 1891, cannot now be considered as authority. That case was decided prior to the application to these Islands of the Federal Constitution, by Article I of the Amendments of which the freedom of speech and of the press is guaranteed. In so far as that case holds that a malicious publication calculated to bring the court into ridicule, contempt, disregard or odium, although not concerning

or referable to a pending cause, constitutes a constructive contempt and is summarily punishable as such, it cannot, in view of the application of Article I of the Amendments to the Constitution of the United States, be considered as a precedent. Moreover, section 4052, R. L. 1915 (P. C. 1869, c. 29, s. 18; am. by implication L. 1872, c. 13, s. 1), upon which the *Bush* case was predicated, in so far as it may attempt to make such publication summarily punishable as and for a constructive contempt, is unconstitutional and void as contrary to the provisions of the Amendment to the Constitution referred to. Nor has section 4056, R. L. 1915 (L. 1903, c. 21, s. 2), any greater efficacy. Obviously neither section 4052 nor section 4056 could enlarge the powers of a circuit judge over contempts beyond that permitted by the Constitution of the United States.

The circuit judge presiding over the division of domestic relations was therefore without jurisdiction to summarily punish the petitioner for the publication of the editorial complained of as and for a constructive contempt. The writ must be made permanent and it is so ordered.

*M. F. Prosser* (*Frear, Prosser, Anderson & Marx* on the briefs) for petitioner.

*H. K. Ashford,* Special Deputy City and County Attorney (*W. H. Heen,* City and County Attorney, with him on the brief), for respondent.