IN THE MATTER OF THE APPLICATION OF JUAN
OXILES FOR A WRIT OF HABEAS CORPUS.

No. 1671.

ORIGINAL.

IN THE MATTER OF JUAN OXILES.

No. 1675.

ERROR TO CIRCUIT COURT FIRST CIRCUIT.
HON. FRANK ANDRADE, JUDGE.

ARGUED JUNE 14, 15, 1926.                    DECIDED JULY 12, 1926.

PERRY, C. J., LINDSAY AND BANKS, JJ.

CONTEMPT—*tampering with witness—mere persuasion.*

Endeavoring to induce a witness to testify falsely is a contempt
of court, even though the method used was mere persuasion
unaccompanied by force, threats or bribery.

SAME—*direct contempt—in presence of court—in hallway adjoining.*

Such an effort (to induce a witness to testify falsely) committed
in the hallway of the judiciary building, the witness being at the
time under subpoena to testify in one of the court rooms of the
circuit court of the first circuit which holds its sessions on the
same floor of the same building, is, within legal contemplation,
an act done in the presence of the court and is a direct contempt.

SAME—*direct contempt—review—writ of error.*

A writ of error does not lie to review a conviction by a circuit
judge for a direct, criminal contempt.

SAME—*review—habeas corpus.*

Upon *habeas corpus*, questions of jurisdiction only can be
inquired into.

OPINION OF THE COURT BY PERRY, C. J.

On November 18, 1925, in the circuit court of the first
circuit, during the trial of the case of the *Territory of*

*Hawaii* v. *Juan Oxiles,* an indictment charging perjury, private counsel assisting the prosecution orally informed the court that it had just come to his attention that the defendant then on trial had tampered with one of the witnesses for the prosecution, one Lorenzo Sequito, and had thereby committed a contempt of court; and the court thereupon suggested to the prosecuting attorney that the charge of contempt against the defendant be formally presented. These proceedings were in the presence of the defendant and his attorney. On the day following the city and county attorney filed an information on oath charging the defendant with contempt of court, attaching thereto and making a part thereof an affidavit by Sequito, sworn to by him on the same day, and reading as follows: "My name is L. A. Sequito, age 28, residing in Honolulu, City and County of Honolulu, Territory of Hawaii. I was subpoena as a witness in the case of the Territory of Hawaii vs. Juan Oxiles on perjury charge. On this date at about 1:30 P. M. Juan Oxiles approached me and asked me if I was at Puuloa on the day Ocampo was arrested. To this question of his I answered him yes,— that I was near the gambling game. Oxiles then told me not to put him in the hole and to have pity in him because he has three children. He also asked me to testify before the court in his favor. That I must tell the court that Ocampo was present in the gambling game. That if I do say so, he, Oxiles will be saved." On the same day, to-wit, November 19, 1925, an order to show cause was issued by the trial judge reading as follows: "Whereas, on November 19, 1925, Howard Hathaway, City and County Attorney of the City and County of Honolulu, Territory of Hawaii, brought to the attention of this court, by means of an information then filed herein, certain alleged facts concerning one Juan Oxiles and prayed for an order that the said Juan Oxiles should appear and

show cause, if any he has, why he should not be adjudged guilty of contempt of court, because of his conduct set forth in the said information, and punished therefor; now, therefore, it is ordered that the said Juan Oxiles appear before this court upon Friday, November 20, 1925, at 3:30 P. M., and show cause, if any he has, why he should not be adjudged guilty of contempt of court, because of his conduct set forth in the said information, and punished therefor." Formal summons, also, was issued commanding the defendant, Juan Oxiles, "to appear upon Friday, November 20, 1925, at 3:30 P. M." before the judge of said court "to answer the annexed order to show cause based upon the accompanying information given to this court by Howard Hathaway, City and County Attorney of the City and County of Honolulu, Territory of Hawaii." On December 9 the defendant filed a return, sworn to by him, to the order to show cause asserting that what he said to Sequito on the occasion in question was, "Don't lie and put me in the hole, tell them Ocampo was there," denying that he requested Sequito to tell any untruth and in effect denying all corrupt intent or action and setting up certain defenses of law. Upon the reading of this return the Territory asked to be allowed to file an amended information. Defendant consented and the amended information was filed, reading as follows: "Now comes Charles B. Dwight upon his official oath and, complaining of Juan Oxiles, informs the court as follows:

"(1)   That the said Charles B. Dwight is the third deputy attorney general of the Territory of Hawaii.

"(2)   That the said Juan Oxiles is the defendant in a prosecution for perjury now being conducted in the first division of the circuit court of the first judicial circuit of the Territory of Hawaii, in the case of the Territory of Hawaii vs. Juan Oxiles.

"(3)   That, at Honolulu, City and County of Honolulu, Territory of Hawaii, in the judiciary building near the rest room thereof in said Honolulu, on November 18, 1925, during the trial of said cause, and during a court recess, the said Juan Oxiles approached one Lorenzo Sequito, a witness under subpoena for the prosecution in the said trial and known by the said Juan Oxiles to be such a witness, and urged the said Lorenzo Sequito to so testify as not to put the said Juan Oxiles in a hole, but to testify—what the said Juan Oxiles well knew to be false and contrary to the proposed testimony of the said Lorenzo Sequito—that, upon March 1, 1925, one Alfred Ocampo was present at a gambling game at Puuloa, City and County of Honolulu aforesaid.

"(4)   That, in thus attempting to improperly influence and corrupt a witness soon to testify in the said case, the conduct of the said Juan Oxiles tended to obstruct and prevent the administration of justice in the said circuit court and constituted a flagrant contempt of court.

"(5)   That the information herein given is based upon an affidavit of the said Lorenzo Sequito, hereto attached, marked 'Exhibit A,' and hereby made a part hereof.

"Wherefore your informant prays that this court order that the said Juan Oxiles appear before it and show cause, if any he has, why he should not be adjudged guilty of contempt of court and punished therefor."

Inferentially it sufficiently appears from the record that the parties thereupon proceeded upon the assumption that the return would be considered a return to the amended information and order to show cause. Sequito was sworn as a witness in the matter of the alleged contempt and gave testimony at length, being examined by the Territory and cross-examined by the defendant. The Territory having rested counsel for the defense stated that the defense would rest "with the understanding that

the denial of the statement made under oath by the defendant in his return should be considered by the court as his evidence in this hearing." This was acquiesced in by opposing counsel and the court. As stated by counsel for the defendant at another time, during the argument, the defendant wished "to have the record show that if Oxiles was placed upon the witness stand his testimony would be the same as it was in the return." This, also, was acquiesced in by opposing counsel and the court. Weighing the evidence adduced, the court orally stated its findings that "during the trial of Juan Oxiles, in a case pending in this court, on the 18th day of November, 1925, at about one thirty o'clock P. M. in the afternoon of that day, shortly before the jury was sworn in the trial of the case of the Territory of Hawaii vs. Juan Oxiles, inside the entrance of the judiciary building, at Honolulu, City and County of Honolulu, Territory of Hawaii, and at a point between the stairways leading to the second floor of the judiciary building, the respondent, Oxiles, accosted Sequito, a witness then under subpoena in said case, who was then waiting in the corridor of the judiciary building, and corruptly attempted to persuade the said Sequito to give false testimony in the case of the Territory of Hawaii vs. Juan Oxiles, by then and there attempting to have the said Sequito testify in a manner which would be favorable to the said Oxiles and unfavorable to the Territory, whose witness the said Sequito was at the time." On December 10 formal judgment was entered expressly adjudicating that the defendant was guilty of a direct contempt of the court "in that on the 18th day of November, 1925, during the trial of the case of Territory vs. Juan Oxiles, said Juan Oxiles, in the presence of the court, to-wit, in the rotunda of the judiciary building, at a spot between the two staircases leading to the second floor, did corruptly endeavor to induce one Lo-

renzo Sequito then under subpoena as a witness for the prosecution in said case, and whom said Oxiles knew was to be a witness in said case, to testify falsely in said case to the prejudice of the Territory and for the benefit of said Oxiles, to-wit, to testify that one Alfred Ocampo was present at a certain gambling game at Puuloa on March 1, 1925"; and the defendant was sentenced to imprisonment for a term of twenty days. On the same day a mittimus was issued reciting at length, in addition to the formal parts, the amended information, the affidavit of Sequito and the judgment and sentence. The case has been brought to this court by writ of error. A writ of *habeas corpus,* also, was asked for and issued.

Neither upon a writ of error nor upon *habeas corpus* will this court inquire into the credibility of witnesses or the weight of the evidence or re-examine the findings of fact made by the trial judge upon the evidence adduced. The facts found by the court must be assumed to be true. The essential facts found were that by persuasion and without bribery or threats (the evidence showed that the defendant was at the time a detective in the employ of the City and County of Honolulu and was known to Sequito to be such) the defendant corruptly endeavored to induce Sequito, who was under subpoena as a witness for the Territory and was at the moment awaiting a call to the witness stand, to give testimony known to the witness to be false; and that this corrupt effort was made in the hallway or rotunda of the judiciary building at a point between the two stairways, that is to say, on the same floor with the court room in which the trial for perjury was being held and only a few feet distant from the door of the court room. This was a direct contempt, as distinguished from a constructive contempt. While it was not committed within the actual view of the trial judge, it was on a part of the premises used by that court

in the performance of its duties as such. It was in a part of the same building in which the trial was being held and in a part set aside for witnesses and others who are waiting to be called to take part in the actual trial of cases. In contemplation of the law the court was in the hallway as well as in the room in which the jury was sitting and the acts charged were committed in the presence of the court. With reference to the procedure to be followed there is a distinction between cases where the contempt is committed within the actual view of the judge and cases where it is committed beyond the actual view of the judge; but nevertheless, in contemplation of law, both are within the presence of the court. In the former it is probably the law that no citation of any kind need be issued to the defendant before the court is authorized to proceed with the charge of contempt and an adjudication thereof. In a case such as that at bar due process of law requires notice to the defendant and an opportunity to be heard; but those requirements were fully complied with in this instance. The defendant had notice, both written and oral, and had the most ample opportunity to hear the evidence against him and to present evidence in his own behalf. He was represented by counsel and was fully heard.

These principles are well established. In the case of *Savin, Petitioner,* 131 U. S. 267, the court said (pp. 276, 277, 278) : "Flores, we have seen, was in attendance upon the court in obedience to a subpoena commanding him to appear as a witness in behalf of one of the parties to a case then being tried. While he was so in attendance, and when in the jury room, temporarily used as a witness room, the appellant endeavored to deter him from testifying in favor of the government in whose behalf he had been summoned; and, on the same occasion, and while the witness was in the hallway of the court room,

the appellant offered him money not to testify against Goujon, the defendant in that case.  *  *  *  The jury room and hallway, where the misbehavior occurred, were parts of the place in which the court was required by law to hold its sessions.  *  *  *  Bacon in his essay on Judicature (No. LVI), says: 'The place of justice is an hallowed place, and therefore not only the bench, but the footpace and precincts and purprise thereof ought to be preserved against scandal and corruption.'  We are of opinion that, within the meaning of the statute, the court, at least when in session, is present in every part of the place set apart for its own use, and for the use of its officers, jurors and witnesses; and misbehavior anywhere in such place is misbehavior in the presence of the court.  *  *  *  If such attempt and offer occurred in the hallway just outside of the court room, or in the witness room, where Flores was waiting, in obedience to the subpoena served upon him, or pursuant to the order of the court, to be called into the court room as a witness, must it be said that such misbehavior was not in the presence of the court?  Clearly not." In *Fisher* v. *McDaniel,* 9 Wyo. 457, 473, in which there was an attempt to bribe witnesses in attendance upon the court in the hall of the courthouse, the court said: "Upon the principle laid down in that case" (the *Savin* case) "no doubt can exist but that the offense of petitioner, within legal contemplation, was committed in the presence of the court.  The bribing of witnesses or jurors strikes at the very foundation of judicial determination; and the court would be shorn of much of its efficiency in the administration of justice if it possessed not the power to protect itself against such reprehensible conduct as the corrupt interference with witnesses in the very precincts of the court, where the witnesses assemble in obedience to subpoena, and while waiting to be called to give their

testimony. Witnesses are not usually required to remain constantly in the court room, and if they are in the hallway, witness room if any, or about the building within easy call, the purpose of their attendance is ordinarily subserved until they are required to take the stand. When in the building in obedience to subpoena or order of court they are in attendance upon the court and subject to its order, and we are not inclined to adopt so technical a construction of the law as would permit a person to station himself within the building where the court is held, and there attempt to corruptly influence the testimony of witnesses without fear of being punished for contempt. The argument of counsel that such conduct would not be in the presence of the court or so near thereto as to interfere with its procedure, or obstruct the administration of justice is, to say the least, unreasonable. It is moreover opposed not only by the decision of the United States Supreme Court in the Savin case, but by other eminent authorities." "There is no doubt that it was a direct contempt. Although it occurred in the grand jury room, the court in contemplation of law was present there." *In re Anin,* 17 Haw. 336, 338. "Such words or acts may be a direct contempt when uttered or committed in the presence of the court or so near thereto as to interrupt its proceedings. On the other hand they may be uttered or committed out of the presence of the court and at a distance, when the contempt is considered an indirect or constructive one." *Coll* v. *Desha,* 27 Haw. 855, 858. To the same effect are *United States* v. *Carroll,* 147 Fed. 947, 951; *In re Brule,* 71 Fed. 943, 947; and *Morgan* v. *State,* 105 S. E. (Ga.) 449, 450.

This being a direct contempt, no appeal in any form lies to this court. R. L. 1925, section 4330, provides that "every judgment, sentence or commitment for a civil contempt or for a constructive or indirect criminal contempt,

shall be subject to appeal, exceptions, writ of error or other proceeding for review as provided by law in other cases." The express grant of a right of appeal in the classes of contempt named, together with the omission from the list of direct criminal contempts, clearly shows an intent on the part of the legislature to make adjudications of guilt in cases of direct contempts non-appealable. It has been repeatedly so held by this court. "Exceptions do not lie to review a judgment of a circuit court in a case of direct criminal contempt." *In re Anin,* 17 Haw. 336. "No appeal lies from a judgment of direct criminal contempt." *In re Mills,* 19 Haw. 88, 93, 94. See, also, *In re Davis,* 11 Haw. 594, 598. The contention of counsel for the defendant is that Act 211, L. 1925, altered the law in this respect and permits appeals in cases of direct contempts. That Act provides, *inter alia,* that "a writ of error may be had as of right in term time or in vacation upon the application of a defendant in a criminal case or of any party in a civil case, or of any legal or personal representative of a deceased party in a civil case." This was by way of amendment of pre-existing provisions of the law which, while permitting a writ of error as matter of right in civil cases, granted a writ of error in criminal cases only upon allowance by a justice of the supreme court. There is nothing in Act 211 indicating an intention to render adjudications of direct contempts reviewable by writ of error. The law upon that subject remains as it was prior to the passage of Act 211.

The contention that since the effort to persuade the witness to testify falsely was unaccompanied by force, threats or bribery there was no contempt is unfounded. The essence of the offense consists in the corrupt attempt to influence a witness to testify falsely and thus to obstruct and pervert the course of justice. The means used

in making the attempt cannot be material. An effort to persuade by appeals to love or to friendship or to sympathy may be as successful as efforts to persuade by means of force, threats or bribery. The former may, possibly, fail in more instances than the latter but that does not alter their character as corrupt attempts to secure false testimony and corrupt attempts to impede and obstruct justice. The mere fact that no cases can be found in which mere persuasion has been held to constitute contempt is not conclusive or indicative of what the law is on the subject.

Any insufficiencies in the affidavit of Sequito, which preceded the information and amended information, are not material. The amended information was formal and sufficiently brought to the attention of the court and later to the attention of the defendant the commission of the alleged offense and the charge thereof. There is no rule with which we are familiar requiring in cases of direct contempt, such as this is, an affidavit supporting an information presented by the attorney general or his representative upon his official oath. The requirements of due process of law were amply observed. "Due process of law, therefore, in the prosecution of contempt, except of that committed in open court, requires that the accused should be advised of the charges and have a reasonable opportunity to meet them by way of defense or explanation. We think this includes the assistance of counsel, if requested, and the right to call witnesses to give testimony, relevant either to the issue of complete exculpation or in extenuation of the offense and in mitigation of the penalty to be imposed." *Cooke* v. *United States,* 267 U. S. 517, 537. The present proceeding was conducted in accordance with these principles.

Another point made on behalf of the defendant is that on December 10, at the time that the mittimus was

signed and issued, the defendant was not personally present in the court room. He was, however, as shown by the clerk's minutes, "in the corridor of the building" (judiciary building) "during the proceedings," that is to say, in the hall immediately outside of the courtroom. In so far as appears from the record, it was of his own accord that he retired to the hallway. The judgment of conviction and the sentence had been orally made and passed on the preceding day in the presence of the defendant. The absence of the defendant when the mittimus was issued does not invalidate the proceedings or affect injuriously the jurisdiction which the court had theretofore acquired over the cause and the defendant. "The precise question, therefore, to be now determined, is whether the retirement of the petitioner from the court room, into another room of the same building, after he had been guilty of misbehavior in the presence of the court, and had violently obstructed the execution of its lawful order, defeated the jurisdiction which it possessed, at the moment the contempt was committed, to order his immediate imprisonment without other proof than that supplied by its actual knowledge and view of the facts, and without examination or trial in any form? In our judgment this question must be answered in the negative. * * * The departure of the petitioner from the court room to another room, near by, in the same building, was his voluntary act. * * * Jurisdiction to inflict such punishment having attached while he was in the presence of the court, it would not have been defeated or lost by his flight and voluntary absence." *Ex parte Terry,* 128 U. S. 289, 311, 312.

R. L. 1925, section 4326, does not attempt to enumerate or define the acts which constitute direct contempts for which the contemnor is summarily punishable by the court. The provision is merely that "every judicial tri-

bunal, acting as such, and every magistrate acting by authority of law in a judicial capacity, may summarily punish persons guilty of contempt."

*Habeas corpus* cannot be made to serve the purpose of exceptions or a writ of error. Under this writ only jurisdictional questions can be inquired into. It clearly appears in this case that the trial court had jurisdiction of the subject-matter and of the defendant. Mere errors or irregularities, if there were any, cannot be examined into on *habeas corpus*. The writ of error itself, as above stated, does not lie.

We have referred expressly to those of defendant's contentions which seem to us to be the most important. All others, likewise, have been considered and are overruled.

The writ of error is dismissed. The defendant is remanded to the custody of the sheriff.

*C. B. Dwight,* Third Deputy Attorney General (*W. B. Lymer,* Attorney General, and *Marguerite K. Ashford,* First Deputy Attorney General, on the brief), for the Territory.

*H. E. Stafford* (also on the briefs) for Oxiles.