IN THE MATTER OF THE APPLICATION OF GEORGE
TITCOMB, for a Writ of Habeas Corpus.

APPEAL FROM CIRCUIT JUDGE WHITING.

HEARING, APRIL 24, 1893.          DECISION, MAY 3, 1893.

JUDD, C.J., BICKERTON AND FREAR, JJ.

There is no offense known to our law as "an assault with a dangerous
weapon." A verdict, the mittimus corresponding, finding the de-
fendant guilty of such an offense, is void. The sentence must be
void upon its face in order to entitle the petitioner to a discharge
on "habeas corpus."

If a sentence within the jurisdiction of the Court and regular on its
face, be found by an inspection of the record to be not responsive to
the indictment, it is voidable and can only be set aside on appeal or
by a writ of error, and is not cognizable on "habeas corpus."

OPINION OF THE COURT, BY JUDD, C.J.

This is an appeal from Judge Whiting of the Circuit Court,
First Circuit, refusing to discharge the petitioner from the
custody of the Marshal, the case, in his opinion, disclosing
errors not cognizable on *habeas corpus*. The petition sets
forth that petitioner was, at the March Term of the Circuit
Court, Fifth Circuit, sentenced to pay a fine of $25 and be
imprisoned at hard labor for the term of two years for the
offense of assault with a dangerous weapon. The mittimus
under which the petitioner is held describes the offense an
"assault with a dangerous weapon." The petition avers that
his imprisonment and restraint are illegal because there is no
such offense known to our law. The return by the Marshal
to the writ is that the petitioner was convicted before the
said Circuit Court "for that, being armed with a dangerous
weapon, to wit, a loaded pistol, he did assault certain persons
(naming them) with intent to kill and murder," etc. The

record shows that the indictment was for the offense set forth in the return. The written verdict of the jury is, "We find the defendant guilty of the offense of an assault with a dangerous weapon," or, as it is literally, "a weapon capable of taking life." ("Ke hooholo nei makou ua hoahewaia ka mea i hoopiiia no ka hewa hoao e hoeha me ka mea ku i ka make.")

The clerk entered upon his minutes that the verdict was "guilty as charged."

The first question to be considered is, which is the verdict; —that presented by the jury, or as entered by the clerk? We have no hesitation in holding that the former must be considered as *the* verdict. By our present practice the verdict is written, handed by the foreman of the jury to the Court, who reads it aloud to them and asks if they assent to it. This is a public act, and it is required by our statutes that the jury shall find a verdict. It need not be in writing, but the present practice so requiring it is proper and not inconsistent with the law. The entry of the verdict by the clerk as understood by him is but his private interpretation of the meaning of the verdict, and cannot be held to contradict the written verdict passed up by the foreman. It might be otherwise if the verdict was oral, recorded by the clerk and then read by him from his minutes to the jury and assented to by them.

We pass now to the next question. Does this verdict disclose an offense known to the law? The defendant was indicted for an offense described in Section 5 of Chapter IX. of the Penal Code, to wit, an assault by a person armed with a dangerous weapon upon another "with intent to commit burglary, robbery, manslaughter or murder, or other crime of such character."

The verdict of the jury found the defendant guilty of an "assault with a weapon dangerous to life." It leaves out the essential ingredient of the offense—the intent to commit the crime, which in this case was, as by the indictment, murder. The verdict was a special one, undertaking to describe

the particular offense of which the jury found the defendant guilty. If the verdict read, "We find the defendant guilty as charged" there would be no difficulty, and the mittimus would describe the offense as set out in the indictment. It is suggested that the jury intended to find the defendant guilty of the offense described in Section 8 of said Chapter IX. of the Penal Code, to wit, of an assault upon another "with a knife, sword cane or any other weapon obviously and imminently dangerous to life"—no intent to do anything more being found. But the objection to this view is, that "an assault by a person armed with a dangerous weapon" cannot be considered as identical with "an assault with a weapon obviously and imminently dangerous to life," as the latter weapon would require no proof of its character, since an inspection of it or a description of it would make its character apparent to the jury, whereas the term, "a dangerous weapon" would include a larger class of weapons, some of which would not be obviously and imminently dangerous to life. Moreover, it is not required of necessity that the assault under Section 5 shall be shown to have been committed with the "dangerous weapon" with which the defendant is armed. And certainly in the case where the assault is made with intent to commit burglary or robbery it might well be that though armed with a dangerous weapon the assailant might not use it in making the assault. We do not consider it a refinement of language to hold that a verdict of guilty of an assault with a weapon dangerous to life would not answer the description of the offense of an assault with a weapon obviously and imminently dangerous to life. And it follows that the mittimus does not disclose an offense known to the law. If it did and found the defendant guilty of an assault with a weapon obviously and imminently dangerous to life, we would not be authorized on proceedings in *habeas corpus* to inquire further into the matter and ascertain whether such verdict was responsive to the indictment. The verdict as rendered is void. The verdict above suggested would be voidable and if, though good upon its face and

being within the jurisdiction of the Court, a comparison of the indictment with the sentence shows that the sentence is not responsive to it, the Court would be authorized on error to reverse it. This, we apprehend, is the distinction between defects which can be inquired into on *habeas corpus* and those errors which are cognizable only by appeal or by writ of error. "A writ of *habeas corpus* cannot be made to perform the functions of a writ of error. To warrant the discharge of the petitioner, the sentence under which he is held must be not merely erroneous and voidable, but absolutely void." *Ex parte Reed*, 100 U. S. 23. This Court, per Preston, J., held in the case of Piipiilani, 7 Haw. 104, as follows: "We are of the opinion that when a mittimus is good upon its face, and the prisoner is in execution under a conviction, a writ of *habeas corpus* should not issue, but that the prisoner should be confined to his right of appeal and that a conviction or judgment cannot be attacked in a proceeding on *habeas corpus* if jurisdiction appears by the record." "We think that in all cases in which the mittimus is insufficient upon its face, the discretion to issue the writ should be exercised, but that it is only when the record does not supply the omission that the prisoner shall be discharged."

In the case before us the record corresponds with the mittimus, and as both are illegal the petitioner is entitled to his discharge. We wish to add that we do not hold that if a person is charged under Section 5 of the Chapter on assaults (Chap. 9 Penal Code) the jury would be warranted in finding him guilty of the offense described in Section 8, as it does not appear to us that these are different degrees of the same offense, but substantially different offenses. In the assault under Section 5, the intent to commit a greater crime is an essential ingredient. Under Section 8, the character of the instrument with which the assault is made is essential, and the intent with which the assault is made is not essential.

Let the prisoner be discharged.

*A. S. Hartwell*, for petitioner.

*Attorney-General W. O. Smith*, for respondent.