(*Not heretofore reported.*)

## EX PARTE THURSTON.

### HABEAS CORPUS.

SUBMITTED MAY 29, 1901.  DECIDED JUNE 12, 1901.

BEFORE FREAR, C. J., AT CHAMBERS.

The petitioner, having refused as a witness to answer certain questions put to him by the grand jury in the circuit court of the first circuit, was ordered by the court to appear and show cause why he should not be required to answer such questions. He made a showing which the court held insufficient in law as to one of the questions asked, namely, as to the name of a client of his. He contended that he was privileged from answering this on the ground that to do so would be a violation of his confidential relation as attorney to his client. The mittimus, which is set forth in the return, after reciting the proceedings at length, continues: "And the said L. A. Thurston being then and there by the court ordered and directed to appear before the grand jury and furnish to it in response to its interrogatory the name of his alleged client, and the said L. A. Thurston then and there in open court declining to do so,

"It is ordered and adjudged that the said L. A. Thurston be and he is hereby fined in the sum of one hundred dollars;

"And it is further ordered and adjudged that said L. A. Thurston be and he is hereby committed to prison until such time as he shall express his willingness to appear before the said grand jury and answer the interrogatory aforesaid, to wit: to disclose the name of his alleged client," &c.

It appears that the petitioner declined to answer a certain question and that thereupon the court sentenced him to pay a fine and suffer imprisonment. It nowhere appears that the petitioner was convicted of contempt. A person cannot lawfully be

sentenced for the commission of an offense until he has been duly convicted or found guilty of the offense. It may be perfectly clear from the evidence in a criminal case tried before a jury that the defendant has committed a certain offense, but the court cannot sentence him for it until the jury have rendered a verdict of guilty against him. · It is equally true that the court cannot in a criminal case heard or tried by itself pronounce sentence until it has found the defendant guilty. A contempt such as it is contended the petitioner committed is a criminal offense and no sentence can be pronounced until after conviction in such a case any more than in other criminal cases. The mittimus does not show that the petitioner was convicted of any offense, nor does it show of what offense he was convicted, if he was convicted of any offense.

In *Ex parte Adams,* 25 Miss. 892, the court "Ordered that George H. Adams be sent to jail, and remain there until he signifies his assent to the court to answer questions to the grand jury, or until final adjournment of said grand jury at this term of court." On habeas corpus before a justice of the high court of errors and appeals, the following language, quoted in Church, Hab. Corp., Sec. 332, was used: "But it is clear that a general order to imprison a party unless he has been convicted either by a jury or by the court is a mere nullity. The law requires that before a sentence of imprisonment shall be passed against a party, he should first be convicted of an offense. In ordinary cases, this conviction must be by the verdict of a jury. In the case of contempts, it may be by the judgment of the court. Still, in either case, the record must show a conviction. Now it will be seen from this return that there is no judgment of imprisonment for a contempt generally, or for a contempt in refusing to answer questions. There is not any conviction or adjudication by the court that Mr. Adams had been guilty of a contempt. Without such judgment the court had no right to commit him to prison, nor the sheriff to detain him. It is true and was admitted on the argument, that Mr. Adams did refuse to answer questions asked by the grand jury, and it may be

true that the court considered that a contempt for which he deserved imprisonment, but no such judgment has been rendered in the case; and however many contempts the prisoner may have committed, it is not lawful to imprison him until convicted thereof by the judgment of the court, which judgment and conviction must appear by the record."

See also *Privett v. Pressley,* 62 Ind. 491; *Ex parte O'Brien,* 127 Mo. 477; *People v. Bennett,* 4 Paige 282; *In re Blair,* 4 Wis. 522; *Sherwood v. Sherwood,* 32 Conn. 1; *People v. Cavanagh,* 1 Parker Cr. R. 588.

The same view seems to be held in England. In *Ex parte Sandau,* 1 Ph. 445, 605, the order after setting forth various recitals went on as follows: "That the said Andrew Van Sandau do stand committed to the custody of the keeper of the Queen's Prison for his contempt of this court in writing, printing, and publishing the aforesaid printed paper, so set out as aforesaid in the schedule to the said petition." The question was whether this amounted to an adjudication that the party had written and published the paper so set out, and that in so doing he had been guilty of contempt. The Lord Chancellor said: "If this form of order had been used for the first time upon the present occasion, and there were no precedents to appeal to on the subject, I should have come to the conclusion that the order was insufficient. I should have considered it necessary that there should have been a direct and distinct adjudication, and not by way of inference and argument merely, that the party accused had committed the act complained of, and that such act was a contempt of the court." He then referred to precedents which contained such direct adjudications and to others which contained indirect adjudications in the form then in question in which the orders contained the words "for his contempt," &c., or their equivalent, and, while commending the former as the more correct and proper, held the latter sufficient in view of the precedents.

In the present case there is not even an indirect adjudication that the petitioner was guilty of contempt.

The only case cited contra that seems to have a bearing on this point is *People v. Nevins,* 1 Hill. 154. The decision in that case is devoted mostly to other questions. There is very little said on this point and that does not commend itself to one's sense of reason. In that case the contempt was a civil contempt. The court seemed to rely to a large extent on special statutes. Whether the case is still regarded as correctly decided in that jurisdiction may be a question. See Bigelow's Overruled Cases, page 379, referring to the later case of *People v. Cowles,* 4 Keyes 38, 50, which is not at hand. I would hardly be justified in following *People v. Nevins,* in the light of the other cases above cited.

It will be unnecessary to consider the other points that were raised.

I find that no legal cause has been shown for the petitioner's imprisonment and he is accordingly discharged therefrom.