In the Matter of the Application of J. Alfred Magoon for a Writ of Habeas Corpus on Behalf of J. M. Vivas.

ORIGINAL.

Argued December 6, 1907.        Decided December 6, 1907.

Before Hartwell, C.J., at Chambers.

CONTEMPT—*mittimus*.

>   The statute, Sec. 3073 R. L., is imperative which requires the mittimus to state the circumstances of the contempt.

OPINION.

In the *Oriemon case,* 13 Haw. 102, it was claimed that the mittimus was illegal by reason of defectve form and ambiguity. The court does not appear to have passed upon the question but said in substance that the function of the mittimus had been performed when the prisoner was placed in custody, and that a proper mittimus could, if needed, be supplied at any time.

That view, if applicable to this case, might obviate any difficulty, owing to the fact that the mittimus does not state the circumstances of the contempt, if it were not that the statute in a later enactment peremptorily requires the mittimus to contain a recital of the circumstances of the offense. Therefore the *Oriemon* case does not control. My impression is that in this case the judgment may be regarded as setting forth a contempt.

In regard to entering judgment after the mittimus was issued. I think we all understand that would frequently be the case. The magistrate might not wish to take the time to write it out then and there. He might do it later on after he had disposed of other matters pending and I see no impropriety in his doing so but I cannot avoid the requirement of the statute that the mittimus contain the statement of the offense held to be

contempt, and therefore it is my judgment that the petitioner be discharged from custody.

*A. S. Humphreys* and *J. A. Magoon* for petitioner.

*C. R. Hemenway, Attorney General,* for respondent.

---

MARCH 5, 1908.

cerning the ground involved and by our practice and rules of court concerning a bond required to be filed are complied with I consider it to be my imperative duty, under this act that I have referred to, to grant the writ; that I am not at liberty to exercise any discretion in the matter, as in cases, for instance, where the writ of error is asked, not under this statute, but on the ground that there is a federal question involved. There I can see that it would be my duty to examine the case and decide whether, in my opinion, there was a federal question involved, and if there was not it would be my duty to deny the writ. That is not this case however.

Now, owing to the fact that I was attorney at the argument before this court of a motion for rehearing of the decision sustaining the will, although it has been held in this case that this did not disqualify a judge—a ruling which has been followed in many subsequent decisions,—I asked counsel for the applicants here to inform me of the occasion to ask me for the writ. They showed me a cablegram from Mr. Robert Morse of Boston, who represents them before the United States supreme court, asking them to obtain the writ immediately. Going still further, I pressed them to ascertain and inform me why this writ was asked for here. They did so and have shown me a cablegram from Mr. Morse, as I remember it, to the effect that the supreme court of the United States had reserved the question, as I understand, of the effect on the case of this last judgment —later judgment, I would say.

Although not obliged, as I understand, to have a hearing on these applications for writs of error, or to notify opposing counsel of the application, for the reason that I have given for asking the questions of the applicants I also asked them to inform counsel on the other side of the application and that I would like to hear any objections that they had to make. No notice was given and I did not intend that any notice should be given by the clerk in the usual form in showing cause, but it was merely an informal matter. Now counsel have filed, as I understand

from them, a statement in writing of their objections to the granting of this writ including, in addition to the objection to my acting in the matter in consequence of my having argued the motion for rehearing, their statement that all these errors assigned now—all these matters assigned as error now—were assigned in the former writ of error which had been dismissed, and they orally informed me—whether it is in the written statement, I can't say—

MR. STANLEY. It is in the written statement.

HARTWELL, C. J. They informed me that by stipulation by counsel the same things it was agreed should be considered—the effect of the judgment of 1907—

MR. STANLEY. Not the effect of the judgment, but the judgment itself, should be incorporated in the record.

HARTWELL, C. J. The judgment itself.

MR. STANLEY. Yes.

HARTWELL, C. J. Very well. Well now I cannot say, as a matter of course, what effect that stipulation may have had upon the United States supreme court; they may have said that it should not be regarded at all.

The reason why Mr. Morse, whom I have known for over fifty years, should have cabled for this writ to be issued here is something that I can't understand. I am told by Mr. Prosser, one of the attorneys for the applicants, that Mr. Morse had been advised by him that he was about to leave for Washington next Friday—tomorrow, and I can infer, if I wish to theorize about the matter, that Mr. Morse wanted to save himself a trip to Washington, and it is possible that his professional engagements are such that he would like to have the writ go right on here-- that I can understand. But whatever his reasons, I don't see how I have the right, and I certainly don't dare, to refuse the writ. I am not ill nor absent from the Territory and therefore this matter cannot be brought before anybody else but myself.

The filing of the written objections to the writ is probably unauthorized, this being not a formal proceeding, and I will

candidly inform counsel that I should order that, of my own motion, to be struck from the record but for the fact of its personal statement concerning myself. Therefore, allowing it to stand is not to be deemed as a precedent for similar matters in the future, and the writt may be taken out.

---

## DECISION NOT HERETOFORE REPORTED.

PIONEER MILL COMPANY, LIMITED, *v.* E. H. HART AND MOSE MEHEULA.

APPEAL FROM CIRCUIT JUDGE, SECOND CIRCUIT.

ARGUED DECEMBER 19, 1905.   DECIDED DECEMBER 19, 1905.

HARTWELL AND WILDER, JJ., AND CIRCUIT JUDGE DE BOLT IN PLACE OF FREAR, C.J.

HARTWELL, J.   In arguing this appeal from Judge Kepoikai's decree for an injunction, it will not be necessary to consider any matters except the averments in the bill, the question being whether they sustain the decree or not. The matters mentioned in the motion to advance the case and in the affidavits filed in that motion, are not before the court on this appeal, nor is the question whether the order was void which was made by Judge Kepoikai, when outside of his circuit, open to consideration,—the respondent having waived the right to question its validity by his general appearance.

Personally I have very great doubt whether the order had validity, notwithstanding the suggestion made by counsel in one of their affidavits that the Cotton Bros. case depended on whether Judge Gear's order was valid or not; I am interested in that case and certainly hope that my feeling on this matter will not affect my colleagues who sit on that question. But whether it does or not makes no difference,

Another thing is not to be considered now, and that is whether the appeal ought to have contained an averment that this court had decided that there was no equitable right for delay. This court had decided that the circumstances, which are the same as presented in the bill, did not constitute an equitable right on the part of the defendant in the ejectment case for delay until it could learn the result of its application for a writ of error. Practically the question is now whether that decision was right or wrong. If it was wrong it is the duty of this court to reverse itself and it would not hesitate to do so. We think that the burden is on the appellee to show that the decision was wrong, in other words, to maintain its position that it has an equitable right for delay.

MR. KINNEY. We accept cheerfully the ruling of the court as to what is now before the court, only in view of the suggestion made that the absence of certain allegations in the bill call for explanation we wish it to appear upon the record that we have prepared the affidavits to explain our good faith.

HARTWELL, J. You will have opportunity to do that if it is desired, but not on this occasion.

MR. KINNEY. We come prepared to offer affidavits explaining just how that happened and happened in perfect keeping with good faith on our part.

HARTWELL, J. That was said by Mr. Derby on the motion to advance.

MR. KINNEY. We accept the ruling of the court, but I wanted to state that we have the affidavits drawn and came ready to present them. We would not want it to appear upon the record that we allowed the matter to pass without our attention to the question of good faith. We might not have been within our rights, but there is no bad faith on the part of counsel before the court. I have examined these affidavits and feel that the court will be entirely satisfied with the good faith of counsel—I simply wish to have it appear here that we were ready and

willing to make the explanation now or at any other time the court suggests.

HARTWELL, J.    At the proper time we shall be ready to hear anything that is sought to be presented on the subject.    The question is not now before the court.

MR. KINNEY.    Then we will assume that the court is satisfied with our good faith.    Whether we made a mistake or not is a different thing.

HARTWELL, J.    There is no ruling on the subject one way or the other because there is no occasion for it.

After argument on the question whether an equitable right is established under the circumstances of the case under any of the rules or doctrines of equitable jurisprudence the court gave an oral opinion as follows:

### ORAL OPINION.

HARTWELL, J.    All the considerations which have been presented today were presented before this court upon the motion of the Pioneer Mill Company to delay notifying the circuit court of the decision overruling the exceptions.    The views of counsel have been expressed with force, incisiveness and strength and yet they fail to satisfy us that we have any right to intervene.    The argument takes it for granted that a right of appeal exists on the part of the defendant in the ejectment case because it asserts that it does.    While we have disclaimed any suggestion that the attempted appeal is based on frivolous reasons it remains true that the case is precisely the same as if there were no meritorious defense; the rule would be the same if there is a right to delay the proceedings; whether applied for by a deserving or an undeserving defendant; this court could not distinguish I take it;—it is not a question of the propriety but of the right of the appeal.    The California case cited, in which the supreme court held that, in aid of its own appellate jurisdiction, it makes such orders or rules as to render its jurisdiction effective, does not touch the question of the right claimed by the defendant to take out a writ of error.    We do not for a moment

conceive that this court can stay an act of Congress or do anything whatsoever towards frustrating or nullifying an act or abridging the right of appeal given by the recent amendment of the Organic Act. But we fail to see, and counsel have not pointed out, any statutory power to give the defendant sufficient time within which to ascertain whether the United States Supreme Court decides that it has a right to a writ of error. Legislation could authorize the exercise of such power, but it would be an usurpation of power for us to undertake to do what the legislature has not authorized. A statute could make provision against oppressive or unfounded appeals, and for appellants' bonds for it is uncertain whether voluntary bonds, not authorized by statute, can be enforced. Take for illustration a case in which a party seeks to appeal on the ground that his constitutional rights are affected in a case in which he has obtained no ruling on the right and in which the record fails to show that the question was raised. An assertion made for the first time after the decision that he has a right to appeal because his constitutional rights are affected would not, I suppose, authorize a stay of proceedings until he should assert that rght.

If a party fails to make out a case at the trial which shows that it is within the amendment of the Organic Act concerning appeals, in a manner which this court can recognize, he has only himself to blame and cannot correctly say that this court is frustrating his right of appeal by failing to intervene and help out his attempt to carry the case up. We have considered the matter in all its aspects; we are aware of the importance of the matter and would not reassert that ruling without due consideration of its significance, and yet, we cannot shrink from the duty, when it appears to be absolutely clear, of declining to assert a power not given us by statute and not within any established doctrine of equity jurisprudence.

The decree appealed from is reversed and the bill is dismissed.

*C. W. Ashford* for appellant.