UNITED STATES of America,
Plaintiff,

v.

Harvey A. GROSS and Llewellyn Gross,
Defendants.

Crim. No. 13042.

United States District Court
D. Nevada.

Jan. 31, 1958.

Franklin P. R. Rittenhouse, U. S. Atty., Las Vegas, Nev., and Clyde R. Maxwell, Jr., Internal Revenue Service, San Francisco, Cal., for plaintiff.

Spurgeon Avakian, Oakland, Cal., and Paul D. Laxalt, Carson City, Nev., for defendants.

---

HALBERT, District Judge.

This action was initiated on June 20, 1957, by the return and filing of an indictment wherein the defendants were charged in the first two counts with violating § 145(b) of the Internal Revenue Code of 1939, 26 U.S.C. § 145(b), on or about March 15, 1951. Defendants have filed a motion to dismiss these counts on the ground that prosecution under them is barred by the six year statute of limitations contained in § 3748(a) of the Internal Revenue Code of 1939, 26 U.S.C. § 3748(a).[1] Plaintiff asserts, in opposition to defendants' motion, that the time for prosecution was extended by the institution of a complaint before a Justice of the Peace of Reno Township, County of Washoe, State of Nevada, on March 14, 1957. Plaintiff further asserts that, in any event, defendants were "absent from the district" a sufficient number of days between March 15, 1951, and March 15, 1957, to toll the running of the statute for a long enough period of time to make the indictment on June 20, 1957, timely.

Under § 3748(a), supra, the institution of a complaint within the period of limitation *before a commissioner of the United States* will extend the period "until the discharge of the grand jury at its next session within the district." The issue is, thus, presented: Did the bringing of the complaint in this case before a Justice of the Peace of Reno Township, County of Washoe, State of Nevada, satisfy the requirements of the extension proviso in § 3748(a)?[2] If this issue is resolved in favor of defendants, I must then reach the issue of whether the sporadic business and pleasure trips[3] taken by defendants between March 15, 1951, and March 15, 1957, were the kind of "absences" from the district that would bring into application the tolling provision of § 3748(a).

I.

It is a basic rule of construction that statutes of limitation applicable to criminal prosecutions are to be interpreted in favor of repose (United States v. Scharton, 285 U.S. 518, 522, 52 S.Ct. 416, 76 L.Ed. 917). I am unable to perceive any latent or patent ambiguity or any flexibility in the phrase, *"commissioner of the United States"*. In order to avail itself of the extension provision in § 3748(a), the Government was explicitly required to institute the complaint before such an officer. A Justice of the Peace for Reno Township, County of Washoe, State of Nevada, is simply not synonymous with "commissioner of the United States".

The Government contends that since it might proceed before a quali-

---

1. There is no contention by any of the parties to this action that this section is not applicable to this prosecution. The 1954 provision, Title 26 U.S.C. § 6531, is inapplicable because its application would have the effect of causing the statutory period to expire prior to August 16, 1957, which is, in effect, prohibited by its very terms.

2. There is no dispute between the parties as to any other facet of the extension proviso, i. e., the indictment was concededly filed prior to the discharge date of the next session of the grand jury within the district.

3. The defendants were actually outside the District of Nevada a total of 137 days between March 15, 1951, and March 15, 1957, but no single trip exceeded 27 days. Only on the occasion of a journey to Hawaii in November and December of 1951 were the defendants gone from the district so long as 27 days. All of the other trips involved periods of time under two weeks in length. Most of said trips, if not all, were shown to be for pleasure and recreational purposes.

fied magistrate (not necessarily a United States Commissioner) in other criminal prosecutions under Rule 3, Federal Rules of Criminal Procedure, 18 U.S.C., and Title 18 U.S.C. §§ 3041 and 3043, it should not be deprived of that latitude in the instant case. Here, the Government seeks to obtain the extension benefits of § 3748(a), and, in so doing, it is asking to be relieved from the bar of the statute of limitations without satisfying the prerequisites to enjoying such a grace period. Moreover, it is fundamental in criminal law that where two statutory provisions cover the same subject matter, but one is general, and may apply to similar, but unrelated situations, and the other is specific and limited to the situation in question, the specific alone will control (United States v. Lamb, D.C.N.D.Cal.N.D., 150 F.Supp. 310, 312). The Government's argument on this point lacks legal foundation.

The Government has further attempted to excuse itself from strict compliance with the extension provision, which it seeks to invoke, by pointing out that the United States Commissioner in Reno, Nevada, was out of the State during the month of March, 1957, and that, therefore, under such circumstances, the complaint could be brought before a Justice of the Peace with the same effect as instituting the complaint before a Commissioner. I can, and I do, take judicial notice of the fact that there are, and were, Commissioners at Boulder City, Fallon, Fernley, Goldfield and Las Vegas, all of which are within the State of Nevada and within the jurisdiction of this Court. The Government does not even seek to explain why the complaint was not instituted before one of these five other Commissioners of the United States serving the District of Nevada. To explain the course it has selected, the Government simply argues that the institution of the complaint is but a mere mechanical formality. Again, the Gov-

ernment has overlooked the fact that *it* is the party attempting to invoke the extension provision of § 3748(a); not the defendants, nor the Court. The Government is duty bound to bring itself within the terms of that which it seeks to invoke. Furthermore, the official duties of a Commissioner of the United States in connection with the institution of a complaint before him by the Government are not mere mechanical formalities; to the contrary, the Commissioner is required to safeguard the rights of the accused by, *inter alia*, enforcing such essentials of fairness as the requirements of probable cause and notice (See: United States v. Rully, D.C.D.Conn., 136 F.Supp. 881, 883; and United States v. Dolan, D.C. D.Conn., 113 F.Supp. 757, 761).

Neither the law, nor the equities, asserted by the Government can remedy the defective launching of this prosecution to the extent that the Government may avail itself of the grace period provided for in § 3748(a).

### II.

It is conceded by all parties that if the tolling proviso of § 3748(a) is applicable, then the defendants were outside of the judicial District of Nevada (where they are alleged to have committed a violation of § 145(b)) for a sufficient number of days between March 15, 1951, and March 15, 1957, to toll the statute of limitations for a period of time sufficient to make the indictment found in this case timely.[4] Furthermore, it is also clear that all of such sojourns outside of the State of Nevada were for business or pleasure purposes, were irregular and not systematic and were for relatively short periods of time.[5] The only real issue presented by the controversy between the parties on this point then, is whether sporadic and limited trips outside the district constitute "absences from the district" within the meaning of the tolling proviso in § 3748(a). Other District Courts have had occasion to

4. The span between March 15, 1957, and June 20, 1957, is 97 days. As indicated in note 3, supra, defendants' travels during the statutory period totaled 137 days.

5. See note 3, supra.

consider the meaning of this phrase, but there is no unanimity of viewpoint on the question. The fact is, the case law on this subject can best be described as an olla-podrida.

In the Southern District of New York, it has been held that taxpayers who make a permanent change of residence to a foreign country [6] or to another state [7] during the statutory period will toll the running of the statute of limitations. In 1939, in that same district, it was held that a taxpayer who made intermittent business or pleasure trips outside of the district would toll the statute of limi-

tations during such trips,[8] but whether or not that interpretation still obtains is not clear.[9] In both the Northern District of New York [10] and the Eastern District of New York [11] it has been held that a permanent change in residence during the statutory period would toll the statute of limitations. Furthermore, in the Northern District of New York it has been held that extensive sojourning outside of the United States will operate to toll the running of the statute of limitations.[12] In the District of Delaware it has also been held that a permanent change in residence would serve to toll

---

6. United States v. Patenotre, D.C., 81 F. Supp. 1000.

7. United States v. Hershenson, D.C., 131 F.Supp. 782.

8. United States v. Frankel, 39-2 U.S.T.C. para. 9714 [unreported in Federal Supplement].

9. See: United States v. Altruda, (1953), No. C-143-52, an unreported decision in the Southern District of New York. In that case a motion to dismiss counts of an indictment charging violations of the Internal Revenue Code of 1939 in 1945 and 1946 was granted even though the taxpayer was shown to have made a total of 5 trips to Europe comprising a total of 917 days during which he was outside of the district in the regular statutory period. The Judge in that case (Honorable Aloysius J. Connor) felt that such factors as the degree to which the departure from the district impaired the prosecution of the Government's case and the intention to change domiciles (or the lack of it) were material in arriving at a conclusion on the question of whether the accused's departure from the district constituted "absence from the district" within the meaning of the tolling proviso of § 3748(a). Judge Connor also indicated his approval of the interpretation given that provision in the Mathis, Eliopoulos and Beard cases (See notes 16, 17 and 18, infra).

10. United States v. Satz, D.C., 109 F. Supp. 94.

11. United States v. Greenfield, D.C., 131 F.Supp. 843.

12. Counsel for the Government have called my attention to a recent unreported decision in the Northern District of New York by Judge Brennan in the case of United States v. Jurzykowski, Schenker and Cohen, D.C., 159 F.Supp. 7, in which it was necessary to apply the phrase, "absent from the district", to more than one factual pattern at a time. All of the defendants were residents of the Southern District of New York, but the returns giving rise to the prosecution were filed in Albany, in the Northern District of New York. Defendant, Cohen, was never absent from his place of abode, while defendants, Jurzykowski and Schenker, were both outside the United States for a sufficient period of time during the six year period to toll the statute of limitations and, thus, make the prosecution timely, if such trips constituted "absences" within the meaning of § 3748(a). The Court applied the Beard case (See: note 18, infra) to defendant, Cohen, and held that even though he was never a resident of the Northern District of New York, he had never undertaken any affirmative course of conduct to absent himself from his usual place of abode, and, thus, was never "absent" within the meaning of the tolling proviso. As to defendants, Jurzykowski and Schenker, the Court found that the same result would obtain regardless of whether the Satz decision (See: note 10, supra), or the Beard decision, supra, were applied, the Court stating, "The several and prolonged absences of both defendants placed them beyond the processes of our courts if the reasoning of either decision is applied." The Court, however, specifically rejected the argument that temporary absences for business purposes would not toll the running of the statute, but seemed to base its decision in this respect on the fact that defendants, Jurzykowski and Schenker, by being outside the United States, placed themselves beyond the process of the Government for a substantial period of time.

the running of the statute of limitations.[13] In the Middle District of Pennsylvania it has been held that a taxpayer who lives within the territorial confines of one revenue district and another judicial district at the same time [14] may never avail himself of the benefits of the statute of limitations, because, according to that Court, he always has been "absent from the district".[15]

However, it has been held in the District of New Jersey that a taxpayer who makes periodic business and pleasure trips to points outside the district does not toll the statute of limitations during such trips.[16] A taxpayer in that district might even live abroad for eleven years after committing the alleged tax offense in the district and still avail himself of the benefits of the statute of limitations, as long as he was not "fleeing from justice".[17] And, as to that substantial minority of taxpayers who reside in the District of Columbia, but are required to file their income tax returns in the revenue collection district of Maryland, it has been held that the benefits of the statute of limitations are available even though they might never be present in the judicial district of Maryland.[18] That Court, further placed itself with the District Court for the District of New Jersey on the question of whether sporadic business and pleasure trips are sufficient "absences" to toll the running of the statute of limitations.[19]

To arrive at any legal conclusion from the foregoing patchwork of case law is difficult, if not impossible. To attempt to bring the problem into a proper focus, it will be well to scrutinize the theories and reasons given in support of the various interpretations of the phrase, "absence from the district". Adherents to the restrictive interpretation theory would hold that the word, "absent", means "not present" and that there is no ambiguity in the phrase requiring further refinement. Theoretically, under this view, any absence, for any reason and no matter how short in duration, would toll the statute of limitations. Given as supporting reasons for applying this interpretation to short business and pleasure trips are such conclusions as the necessity for removing the possibility of (1) using such trips as an easy method of avoiding prosecution, and (2) the burden of having to try the issue of whether the accused left the district to avoid prosecution or for purely legitimate purposes. On the other hand, liberal constructionists would hold that something in the nature of an intent to flee from justice, or to hamper the investigatory and enforcement functions of the Government is implicit in the phrase, "absent from the district", or that, at least, the accused should have placed himself beyond the reach of criminal process before the statute of limitations should be tolled.

In his thorough and scholarly article, Tax Crimes—Statute of Limitations—Tolling Provisos, 11 Tax Law Rev. 137, Professor Jim R. Carrigan traces the historical background of the tolling provision with which we are here concerned, and attempts to define a rational interpretation for future reference. Professor Carrigan points out that the phrase, "absence from the district", was substituted for the phrase, "fleeing from justice" (originally included in the House draft), by the Senate Committee prior to the final passage of the 1884 Revenue Act (23 Stat. 122), but no reasons were

---

13. United States v. Udell, D.C., 109 F. Supp. 96.

14. As pointed out in Wolfram, Tolling the Statute of Limitations in a Criminal Tax Case: A Supplement, 28 Taxes 609 [1950], this situation exists with respect to almost one-third of the counties in the nation.

15. United States v. Anthracite Brewing Co., D.C., 11 F.Supp. 1019.

16. United States v. Mathis, D.C., 28 F. Supp. 582.

17. United States v. Eliopoulos, D.C., 45 F. Supp. 777.

18. United States v. Beard, D.C., 118 F. Supp. 297.

19. Ibid. at pages 300, 303.

ever recorded explaining the change. He suggests that the phrase, "absence from the district", might well have been borrowed from state civil statutes of limitation, which generally provided for tolling under such circumstances because personal jurisdiction could not be obtained over defendants beyond the reach of the civil process of the state.[20] But the anomaly of applying such concepts to criminal prosecutions is pointed out by Carrigan where he states:

> "The prospective defendant's absence from the jurisdiction was a far more serious obstruction where the contemplated action was an *in personam* civil suit than where it was a criminal prosecution. Procurement of an indictment or information, not service upon the defendant, halts the criminal statute of limitations. Although a defendant may not be tried *in absentia* for a federal crime, there is no requirement that he be present in the district when indicted, and therefore the criminal statute of limitations may be tolled by indictment without regard to the defendant's absence from the district. That few states employed in their criminal limitations the same tolling language used in their civil statutes indicates general recognition of the fundamental distinction. If in fact the 1884 Senate borrowed its tolling proviso from state statutes limiting civil actions, the distinction must have been overlooked." (11 Tax L.Rev. at 140, footnote references omitted).

However, it is pointed out that what the Commissioner of Internal Revenue sought in the 1884 Bill was a tolling proviso where "the accused placed himself beyond the jurisdiction of the court of the district where the offense was committed",[21] but Carrigan suggests that this was a mere paraphrase of the traditional "fleeing from justice" tolling proviso.[22] Indeed, this was the House interpretation of the provision prior to its alteration in the Senate.[23]

In the light of the present state of the law, a strict interpretation of "absent from the district" is of questionable cogency. Earlier reasons for tolling vanish in the face of the nation-wide criminal process provided for by Rule 4(c) (2), Federal Rules of Criminal Procedure. Furthermore, the unreasonableness of a literal application of an old standard to modern situations was, doubtless, considered by Congress when it drafted a new tolling provision into the 1954 Internal Revenue Code.[24] However, § 6531 [I.R.C.1954] does not apply to any tax prosecution if it would have the effect of shortening the statute of limitations to such an extent that the period would expire prior to August 16, 1957. But, even so, when viewed in its historical setting, and cognizance is taken of the reasons behind the rule in 1884, the 1884 tolling proviso in § 3748(a) [I.R.C.1939] should not be distorted by a restrictive literal interpretation. Moreover, such an interpretation would create an unnecessary inequality between the treatment of tax violators to which the 1939 code applies and those to which the 1954 code applies.

■■ It is, therefore, my considered opinion that sporadic and intermittent trips to points outside the judicial district wherein the offense is alleged to have been committed, such as were taken by defendants in the instant case, are not "absences from the district" within the tolling proviso of § 3748 [I.R.C.1939]. That provision should not come into play

---

20. Others have reached the same conclusion. See: Wolfram, Tolling the Statute of Limitations in a Criminal Tax Case, 28 Taxes 53, 55, note 15 [1950]; and note, 66 Harv.L.Rev. 1323.

21. 11 Tax L.Rev. 137, 138, note 11.

22. Ibid. at page 139.

23. Ibid. at page 139, notes 15 and 16.

24. 26 U.S.C. § 6531. For the phrase, "absent from the district", the 1954 Code provides for tolling either where the accused is outside the United States or a fugitive from justice within the meaning of § 3290 of Title 18 of the United States Code.

unless the defendant's absence either indicates "flight" from justice or substantially impairs and impedes the investigatory and enforcement functions of the Government. No such situation is made to appear in this case.

It is, therefore, ordered that defendants' motion to dismiss counts one and two of the indictment on file in this action be, and the same is, hereby granted. Said counts one and two of the indictment are hereby dismissed.