## IN THE MATTER OF THE APPLICATION OF FELICIA ANN BALUCAN FOR A WRIT OF HABEAS CORPUS.

No. 4188.

MAY 26, 1960.

TSUKIYAMA, C. J., MARUMOTO, CASSIDY, WIRTZ AND LEWIS, JJ.

OPINION OF THE COURT BY LEWIS, J.

An amended petition for a writ of habeas corpus, or alternatively an order to show cause, having been filed in this court in behalf of a girl fifteen years of age, setting forth her imprisonment for alleged contempt of court and seeking her release from the Hawaii County Jail, the court on April 14, 1960, ordered the custodian of the jail, the Chief of Police of the County of Hawaii, to show cause for the imprisonment. Upon a motion for allowance of bail showing that the Circuit Court of the Third Circuit denied the same, the court ordered her released on bail. This girl hereinafter is called the "petitioner."

The return to the order to show cause showed as follows:

On the morning of April 12, 1960, the case of State v. Thomas Clark Silva, Criminal No. 3245, Circuit Court of the Third Circuit, was called for trial jury waived. The accused, Silva, was on trial for a violation of R.L.H. 1955, § 309-14, to wit, that in November, 1959, in Kainaliu, County of Hawaii, he did have sexual intercourse with petitioner, a female under the age of 16 years who was not his lawful wife.

Petitioner was called as a witness by the prosecution. Previously, in Juvenile No. 5525, Third Circuit, petitioner had been brought before the juvenile court on a petition

alleging her to be a delinquent child by reason of having committed the offense of adultery, a violation of R.L.H. 1955, § 309-8, to wit, that on two occasions in November, 1959, once at Kainaliu and the other at Keauhou Bay, County of Hawaii, she had sexual intercourse with Silva, the same man as the accused in Criminal No. 3245, described in the petition as a married adult male.

The petition in Juvenile No. 5525 was heard on January 29, 1960, and again on February 1, 1960, following which, on February 1, 1960, the petition was dismissed. In this Juvenile No. 5525, petitioner was represented by the same attorney who appeared for Silva in Criminal No. 3245. This same attorney appears for her here, and as will be noted counselled her in connection with her appearance as a witness in Criminal No. 3245. The juvenile court proceeding was dismissed after the court "held that she could not be compelled to testify on the grounds of self-incrimination," as stated in the amended order of April 13, 1960, annexed to the return.

At the opening of the trial in Criminal No. 3245 defense counsel renewed a request, which had been made after the divorce of Silva, for permission under R.L.H. 1955, § 323-1, for petitioner to marry Silva. At that time defense counsel announced that he also represented petitioner, stating that he had been retained by her parents and by her. The court again denied the request, then questioned counsel as to the nature of his representation of petitioner. However, the dual capacity in which counsel was and still is retained is not before us at this time. We use the term "counsel" to denote the attorney who was acting in this dual role.

Petitioner testified in Criminal No. 3245 that she had known the accused a year and three months. When she was asked whether she had had sexual intercourse with him in November, 1959, the court denied counsel's request

that the witness be instructed she could be tried for any offense about which she might testify and did not have to answer, the court ruling "that the acquittal of Felicia Ann Balucan in Juvenile Proceedings, No. 5525, constitutes a complete bar against any further proceedings against her for the same offense specified in the petition of said Juvenile Proceedings, either in the Juvenile or Circuit Court."

The question then being put again, petitioner stated: "I refuse to answer." Questioned by the court as to her reasons for refusing she did not answer, but counsel interposed the statement: "If your Honor please, I have advised Miss Balucan to refuse to answer on the grounds of self-incrimination." The witness still refusing to answer the following ensued:

"The Court: The Court finds you are in contempt of court and you will be placed in the detention home until such time that you want to answer the question."

Counsel objected that: "If you are going to try her for contempt of court, then the proceedings should be properly taken and the charge made." Court then recessed.

At 3:15 P.M. on the same day, court was reconvened and petitioner again placed on the stand, whereupon counsel requested an opportunity to discuss the matter with her. This request was granted and the court recessed for that purpose. When the trial resumed petitioner denied that she had told anyone she wanted to come back to court and testify. Later she testified that she had told the probation supervisor she might or might not testify, and now had made up her mind not to testify.

The court then read to petitioner the order which had been filed at 3:20 P.M., on that day, April 12, 1960, hereafter reviewed. Asked by the court whether she understood "that you are not subject to prosecution for any acts that may have been committed between you and Mr.

Silva on November, 1959, and that you will not be prosecuted for any such acts," the petitioner stated she understood, that she had been advised by her attorney not to testify, whereupon counsel stated that he did so advise her on grounds of self-incrimination.

The return shows petitioner was received at the jail on April 12, 1960, by virtue of a letter of that date from the probation supervisor of the juvenile court, confirmed the following morning by another letter of the probation supervisor transmitting a certified copy of the order filed at 3:20 P.M., April 12, 1960. The return further shows that petitioner later was held under the amended order of April 13, 1960.

Both the order of April 12, 1960, and the amended order of April 13, 1960, were entitled "In the Juvenile Court of the Third Circuit" under Juvenile No. 5525, designated "In the Matter of Felicia Ann Balucan, a Delinquent Child." The number was the same as that of the delinquency proceeding which had been dismissed on February 1, 1960.

The April 12 order found the minor in contempt, declared her a delinquent ward of the court, placed her in the custody of the probation department for the period of her minority, ordered her confined in the women's ward provided there was no adult confined in the ward with the minor, and specified that said confinement be "not less than fifteen (15) days at which time she shall be returned to the Juvenile Court, or sooner returned upon her willingness to purge herself of the Contempt." The amended order of April 13 additionally set out the circumstances of the contempt in Criminal No. 3245, outlined above.

The judges of the third circuit court are vested with juvenile court jurisdiction by R.L.H. 1955, § 333-2. However, the judge presiding in Criminal No. 3245 did not

276

recess the case and reconvene as the juvenile court when passing upon the petitioner's contempt. No petition setting forth the grounds of the alleged delinquency was filed. The parents were not notified. See R.L.H. 1955, § 333-5.

Since the court was not sitting as a juvenile court and had no juvenile court case before it, viewed as juvenile court orders the order of April 12 and amended order of April 13 are void. Accordingly, they are subject to collateral attack in this habeas corpus proceeding, notwithstanding juvenile court orders are appealable under R.L.H. 1955, § 333-11. Compare *In re Titcomb,* 9 Haw. 131, and *In re Marteles,* 38 Haw. 479, with *In re Hoopai,* 10 Haw. 610, *In re Abreu,* 27 Haw. 237, and cases there cited.

Petitioner has urged this court to ignore the juvenile court entitlement and consider the order and amended order as having been issued from the Circuit Court of the Third Circuit under its ordinary jurisdiction. That would entail stripping the order down to a contempt order by ignoring as surplusage the court's further declaration that petitioner is a delinquent ward of the court placed in the custody of the probation department for the period of her minority.

R.L.H. 1955, § 269-5, provides in part:

"Whenever any person is adjudged guilty of any contempt or sentenced therefor, the particular circumstances of the offense shall be fully set forth in the judgment and in the order or warrant of commitment * * *."

Under this provision there must be a judgment and mittimus setting forth the circumstances of the contempt, otherwise the petitioner held in contempt must be discharged from custody. *In re Vivas, Application of Magoon,* 18 Haw. 670; *In re Bevins,* 25 Haw. 544; *Fernandes* v. *Fernandes,* 32 Haw. 604. The particular matter for which

the petitioner is held in contempt must be made to appear, and must not be left in doubt. *Fernandes* v. *Fernandes, supra; Vares* v. *Vares,* 28 Haw. 291. The statute is imperative, and constitutes an exception to the general rule, under which a mittimus is "no necessary part of the authority of the sheriff for his [petitioner's] detention" (*Ex parte Oriemon,* 13 Haw. 102, 107; *In re Gaspar,* 34 Haw. 484), unless the return in the habeas corpus case refers only to the mittimus (*In re Tam Fook,* 7 Haw. 162).

R.L.H. 1955, § 269-5, further provides that on proceedings for review of the judgment, sentence or commitment for contempt, "no presumption of law shall be made in support of the jurisdiction to render the judgment or pronounce the sentence or order the commitment." (*Cf. Ex parte Smith,* 14 Haw. 245, decided before this provision was enacted.)

We conclude that under R.L.H. 1955, § 269-5, the requirement that the circumstances of the contempt be set forth in the judgment and mittimus is jurisdictional. If the statute has not been complied with the petitioner cannot be held on the ground that the judgment can be corrected and a mittimus issued at a later date. *Cf. Oriemon* v. *Territory,* 13 Haw. 413, 418, *Ex parte Oriemon, supra, In re Akamu,* 17 Haw. 487, *Re Silva,* 23 Haw. 766, and *In re Gaspar, supra,* which were not contempt cases, and in none of which, moreover, was the entitlement of the court involved.

Petitioner accordingly is entitled to be discharged. The statute has not been complied with. The order, as amended April 13, 1960, adjudged petitioner a delinquent ward of the court for the period of her minority, but the assumption of juvenile court jurisdiction was void. Further, petitioner was ordered confined "not less than fifteen (15) days at which time she shall be returned to the Juvenile Court, or sooner returned upon her willingness to purge

herself of the contempt," and the order set forth as the basis thereof the circumstances which occurred in Criminal No. 3245, yet the order was not made by the Circuit Court as such.

On April 12, 1960, the court was sitting as the Circuit Court in Criminal No. 3245, not the Juvenile Court. There was a direct contempt in open court. A finding of contempt was orally made at the time and the court had jurisdiction to make it because, as we hold, the petitioner was not privileged to refuse to answer the question. It was not essential that the judgment be then and there entered. See *In re Y. Anin,* 17 Haw. 338, 340; *In re Oxiles,* 29 Haw. 323, 334; *In re Vivas, supra; Sacher* v. *United States,* 343 U.S. 1, annotated 96 L.Ed. 766. However, the difficulty is that the judgment which was entered, and upon which the return seeks to justify the holding of the petitioner, was not made by the court before whom the contempt was committed. *Rose* v. *Ashford,* 22 Haw. 469; 12 Am. Jur., *Contempt,* § 48.

Moreover, R.L.H. 1955, § 269-2, provides that when the contempt consists in the refusal to perform an act which it is in the power of the party to perform and he is ordered imprisoned until he performs it, "in that case the act shall be specified in the warrant of commitment." We find nowhere in the record a warrant of commitment which meets the requirements of that section or section 269-5.

The requirements of the statute not having been met, it ordinarily would be "neither necessary nor profitable" to consider the circumstances of the contempt. *Fernandes* v. *Fernandes, supra.* But here the trial of a criminal case has been interrupted by reason of a witness' claim of a constitutional right. The rule applicable in the case of a writ sought by an accused, *i.e.* that "the orderly administration of justice will be better subserved" by declining

to interfere by habeas corpus in a pending criminal case in advance of final adjudication (*Riggins* v. *United States,* 199 U.S. 547), is inapplicable here. The right does not pertain to the accused, denial of the right could not be rectified upon review by this court of the criminal case, and the remedy of habeas corpus is available to the witness held in contempt. *State ex rel Kennon* v. *Hanley,* 249 Wis. 399, 24 N.W. 2d 683; 25 Am. Jur., *Habeas Corpus,* § 97; see also as to the privilege being that of the witness only, *Territory* v. *Lanier,* 40 Haw. 65, reh'g den. 40 Haw. 278. Without doubt, were we to apply the above quoted *Fernandes* rule the unanswered questions again would be placed before us by another habeas corpus petition, and the trial of the criminal case would be interrupted that much longer. So instead of merely ruling that the court did not exercise whatever jurisdiction it may have had, we proceed to consider what jurisdiction it had to exercise.

We first take up the jurisdiction of the presiding judge to summarily punish for contempt a minor under eighteen years of age.

A summary proceeding for contempt is so far criminal in nature as to require that there be a conviction of the contempt, if the contemnor is to be incarcerated. *Vares* v. *Vares, supra; Ex parte Thurston,* 17 Haw. 639. Yet a contempt proceeding calls for application of only some aspects of the criminal law. *Gompers* v. *United States,* 233 U.S. 604.

The power of summary punishment for contempt is an inherent power of a constitutional court. *Onomea Sugar Co.* v. *Austin,* 5 Haw. 604; *In re Bevins, supra;* 12 Am. Jur., *Contempt,* § 49. Especially is this the case where the primary purpose is to compel obedience to an order of such court. *Young* v. *Knight,* 329 S.W. 2d 195 (Ky. 1959).

If the juvenile court statute, R.L.H. 1955, chapter 333,

were construed as requiring the circuit court, in a case such as this, to cause proceedings to be brought in the juvenile court against the witness who refused to answer, that would not be a mere matter of statutory regulation of the procedure (see *In re Bevins, supra*), but would mean that an essential power of the circuit court had been rendered nugatory, and for that reason no such construction should be given to the juvenile court statute. *Onomea Sugar Co.* v. *Austin, supra; Young* v. *Knight, supra.* We agree with the court in *Young* v. *Knight,* that:

"* * * a court of general jurisdiction, such as a circuit court, is not deprived of jurisdiction to deal with contempt by a disobedient or recalcitrant witness within the age of the juvenile court's jurisdiction, as in the instant case."

R.L.H. 1955, § 333-10, which requires that any child under the age of eighteen years who is arrested shall be taken before the juvenile court, is inapplicable to a case of direct contempt of a circuit court, committed in open court and summarily dealt with in such manner as to compel obedience to the court's orders, without the filing of a charge or issuance of process thereon, under the procedure permitted in such cases, as explained in *Rose* v. *Ashford, supra.* The commitment of the witness in such a case is in execution of the judgment of contempt, the court already having jurisdiction over the witness without the making of any arrest.

We now consider the privilege claimed under Article I, section 8, of the Bill of Rights of the State Constitution which provides in the words of the Fifth Amendment of the Constitution of the United States:

"* * * nor shall any person be compelled in any criminal case to be a witness against himself."

As a basis for the privilege, it is argued that petitioner, being over fourteen years of age, could be prosecuted for

a felony with the consent of the juvenile court, R.L.H. 1955, § 333-1, and that she could be prosecuted for the very felony with which Silva stands charged, violation of R.L.H. 1955, § 309-14, sexual intercourse with a female under the age of sixteen years, either as a principal aiding in the commission of the offense (R.L.H. 1955, § 252-1), or as an accessory (R.L.H. 1955, § 252-2). It of course is true that a female may be convicted as an accomplice to an act which a female is incapable of perpetrating herself. See *State* v. *Pickel,* 116 Wash. 600, 200 Pac. 316, modified on rehearing 116 Wash. 607, 204 Pac. 184; annotation in 131 A.L.R. 1322. But here the felonious character of the act turns upon the age of the female, nothing more. As pointed out in *Territory* v. *Delos Santos,* 42 Haw. 102, and *Territory* v. *Guillermo,* 43 Haw. 43, even the girl's misrepresentation of her age will not save the defendant. She is regarded as the victim of the crime. Clearly, where the gravamen of the charge is the age of the female she cannot be prosecuted on that charge. *Queen* v. *Tyrrell* [1894] 1 Q.B. 710, cited with approval in *Gebardi* v. *United States,* 287 U.S. 112, 123; see also *State* v. *David,* 226 La. 268, 76 So. 2d 1. Consequently, the cases involving capacity of an infant to participate as an accomplice in an act of incest or sexual perversion are not in point.

It further is argued that if petitioner is forced to testify:

> "Her answer might form a link in the chain of evidence that would be sufficient to convict her of the felony of sodomy. * * * If this question were answered, only one more question would be necessary to complete the chain * * *."

The "chain of evidence" rule was recognized in *Territory* v. *Lanier, supra,* pp. 72-73, as follows:

> "* * * the privilege against self-incrimination ex-

tends not only to answers that would in themselves support a conviction, but to those that would furnish a link in the chain of evidence needed to prosecute." However, as further stated in *Territory* v. *Lanier*:

"The constitutional protection against self-incrimination 'is confined to real danger and does not extend to remote possibilities out of the ordinary course of law.'

" '* * * whether he [the witness] must answer is determinable by the trial court in the exercise of its sound discretion; and unless there is reasonable ground, as distinct from a remote or speculative possibility, to apprehend that a direct answer may prove dangerous to the witness, his answer should be compelled.'

" '* * * the court must be satisfied from all the evidence and circumstances, and "from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious exposure would result." ' "

See also R.L.H. 1955, § 222-21.

We fail to see how the presiding judge in Criminal No. 3245, in the setting of that case and upon consideration of the entire record, should have supposed that an answer to the question put as to acts of sexual intercourse would expose petitioner to a reasonably apprehended danger of prosecution for sodomy.

Even if her testimony would not expose her to prosecution for a felony, it is asserted, there might be elicited information as to acts of sexual intercourse with Silva, not necessarily limited to those alleged in the petition in Juvenile No. 5525, for which new proceedings against her as a delinquent child might be brought in the juvenile court. It further is contended that she might be prosecuted

in the criminal courts for a misdemeanor upon attaining the age of eighteen, by reason of such acts.

Petitioner argues that she has not been "in jeopardy" by reason of the proceedings in Juvenile No. 5525, citing *In re McDonald,* 153 A. 2d 651 (Munic. Ct. Ap. D.C. 1959), and cases there cited. Respondent argues that under principles of res judicata, petitioner is protected, both from further juvenile court proceedings and from criminal prosecution. We do not pass upon these contentions. Taking the view most favorable to petitioner—that on the law or the facts or both neither double jeopardy nor res judicata would be an adequate shield — we nevertheless find the petitioner not entitled to the privilege. Hence, the grounds we find decisive are not those in the circuit court.

We now consider whether the possibility of juvenile court proceedings against petitioner as a delinquent child will serve as the foundation for the privilege.

Petitioner cites *In re Sadleir,* 97 Utah 291, 85 P. 2d 810, modified on rehearing 97 Utah 313, 94 P. 2d 161, and argues that it is the only case in which the exact question here involved has arisen, seeking to distinguish cases where the privilege has been claimed in the juvenile court itself. That is not a valid distinction. The decisive point is what the juvenile has to fear, not where he is put in fear.

In *Sadleir,* there were involved both the constitutional privilege against self-incrimination and a statutory privilege against self-degradation on a collateral matter. A majority held that the witness, a girl of seventeen, upon passing her eighteenth birthday if that occurred before the statute of limitations had run, might be prosecuted for fornication or other sexual offense. But, as well expressed in the dissenting opinion, the majority further stated "out of an abundance of caution * * * that * * * she is protected because she may by her answers lay

herself open to juvenile court jurisdiction." The majority opinion is far from clear as to whether this ruling was made under the privilege against self-incrimination or the other privilege involved. Indeed, the majority stated that no good purpose would be served by collecting and analyzing the cases bearing on: "Just what distinctions may be drawn in considering what constitutes a crime, a public offense, a delinquency or matters that will have a direct tendency to degrade the character of a witness called upon to answer concerning acts to which a person may have been a party * * *."

Moreover, at the time the testimony was sought, the court evidently lacked sufficient information to say whether there was a possibility that criminal proceedings in the regular courts might ensue. There are a number of cases in which this possibility definitely existed, or was noted as an open question. In some the privilege was allowed, in others denied. These cases are not helpful in determining the precise point involved here. Such cases are: *In re Sadleir, supra, Ex parte Tahbel,* 46 Cal. App. 755, 189 Pac. 804, and *Dendy* v. *Wilson,* 142 Tex. 460, 179 S.W. 2d 269, in each of which the privilege was allowed, and *In re Santillanes,* 47 N.M. 140, 138 P. 2d 503, *In re Holmes,* 379 Pa. 599, 109 A. 2d 523, aff'g 175 Pa. Super. 137, 103 A. 2d 454, and *In re Mont,* 175 Pa. Super. 150, 103 A. 2d 460, in each of which the privilege was denied.

In *State* v. *Shardell,* 107 Ohio App. 338, 153 N.E. 2d 510 (1958) there is no discussion as to whether the sixteen year old boy there involved might later be prosecuted for a felony, which on the evidence he had committed. Except for that, we agree with the conclusion reached in that case on the point at issue. Because of the nature of juvenile court proceedings, the possibility thereof may not be used as the basis of a claim of privilege against self-incrimination. See Paulsen, *Fairness to the Juvenile Offender,* 41 Minn. L. Rev. 547, 561.

This leaves for consideration the possibility of prosecution in a criminal court for the offense of adultery, a misdemeanor, as affected by the juvenile court statute (R.L.H. 1955, c. 333) and the statute of limitations (R.L.H. 1955, c. 254).

The same act which constitutes the misdemeanor also constitutes the minor a "delinquent child." As such, he can be subjected to juvenile court proceedings by the filing of a petition, provided he is under eighteen years of age at the time of filing of the petition, or at the time of his arrest or apprehension, whichever is earlier. If arrested or brought to trial for a misdemeanor when under the age of eighteen years he is to be taken before the juvenile court. In such case, there is no provision for the juvenile court to consent to his trial in the criminal court prior to his attainment of the age of eighteen. R.L.H. 1955, §§ 333-1, 5, 9, 10.

Petitioner will reach the age of eighteen in January, 1963. Under R.L.H. 1955, § 254-1, a two-year statute of limitations is applicable to the misdemeanor. More than two years necessarily will elapse between the commission of any offense revealed by the testimony and petitioner's attainment of the age of eighteen.

The bar of the statute of limitations being complete, this defeats the privilege the same as an immunity statute. *Brown* v. *Walker*, 161 U.S. 591, 598; see also *Ullmann* v. *United States*, 350 U.S. 422.

It is argued that: "If the witness should absent herself from the State for approximately one and one-half years and then return, she could be tried and convicted of the misdemeanor of adultery in the criminal courts after she reaches the age of eighteen years."

R.L.H. 1955, § 254-1 provides in pertinent part that: "Nothing herein contained shall bar any prosecution against any person who * * * absents himself from the State, * * *."

The possible absence of the petitioner from the State before attaining the age of eighteen years does not change the case.

An exception to the bar of the statute is to be narrowly construed. *Bridges* v. *United States,* 346 U.S. 209; *People* v. *Guariglia,* 187 Misc. 843, 65 N.Y.S. 2d 96, aff'd 272 App. Div. 784, 69 N.Y.S. 2d 759. Some authorities hold that the intent of an exception of this character is that the defendant "shall not be permitted to profit by his own wrongful act in delaying and frustrating prosecution." *People* v. *Guariglia, supra.* Others hold that the intent is to toll the statute even if the absence is involuntary, as in *Traxler* v. *State,* 251 P. 2d 815 (Okla. Crim. App. 1952). Some hold that temporary absence does not place the defendant beyond the reach of criminal process or substantially impair the law's enforcement, and should not be counted. *United States* v. *Gross,* 159 F. Supp. 316. All of these readings are meaningful and we need not choose between them. All of them are consistent with the purpose of the statute. See *Commonwealth* v. *Turner,* 176 Pa. Super. 32, 107 A. 2d 136.

Here we have a situation in which infancy prevents the prosecution but does not toll the statute of limitations. An infant cannot be precluded from enjoying the benefit of the statute on account of absenting himself from a prosecution to which he is not subject during the statutory period if he remains.

The bar of the statute of limitations does not apply to juvenile court proceedings. See Rappeport, *Determination of Delinquency in the Juvenile Court,* p. 142; Wash. U.L.Q., Apr. 1958, 123, 142; see also *Cunningham* v. *United States,* 256 F. 2d 467 (5th Cir. 1958). However, as we have held, the possibility of such proceedings cannot serve as the foundation of the privilege. But it is conceivable that the bar of the statute of limitations would be lost as

to the criminal prosecution, if the petitioner during the two-year period "flees from justice," the statute further providing that it shall not bar the "prosecution against any person who flees from justice." This depends upon the applicability of the rule stated in *Streep* v. *United States,* 160 U.S. 128, 135, under which it might be reasoned that fleeing from justice includes the justice of the juvenile court. No such argument has been presented on behalf of the petitioner, and with good reason. The court in weighing the privilege was not required to speculate on the possibility that she would deprive herself of the immunity of the statute of limitations by fleeing from the jurisdiction of the juvenile court.

Petitioner accordingly was not entitled to the privilege and the circuit court had jurisdiction to compel her to answer, but failed to exercise that jurisdiction in the manner required by law. On that latter ground the petitioner will be discharged.

*H. William Burgess* (*Allen W. Wooddell* with him on the briefs, *Carlsmith, Carlsmith, Wichman and Case* of counsel) for petitioner.

*Harold Y. Shintaku,* Deputy Attorney General, and *Yoshito Tanaka,* County Attorney, County of Hawaii (*Mamoru Shimokusu,* Deputy County Attorney with him on the briefs) for respondent.